Brian T. Kiolbasa, OSB No. 112890
kiolbasab@lanepowell.com
**LANE POWELL PC**
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| SEATTLE PREMIUM TRANSPORTATION, LLC , a Washington corporation,<br><br>                              Plaintiff,<br><br>    v.<br><br>PEOPLE'S BANK OF COMMERCE D/B/A STEELHEAD FINANCE, LLC, an Oregon entity,<br><br>                              Defendant. | Case No.  1:23-cv-01769<br><br>**COMPLAINT FOR MONEY DAMAGES** |

COMES NOW plaintiff Seattle Premium Transportation, LLC ("SPT"), as and for its Complaint for Money Damages against defendant People's Bank of Commerce d/b/a Steelhead Finance, LLC ("Steelhead"), hereby alleges and avers as follows:

<u>**PARTIES**</u>

1.      SPT is a Washington corporation with its principal place of business in Seattle, Washington, that operates, *inter alia*, as a motor carrier of property for hire as defined by 49 U.S.C. § 13102(14).

PAGE 1 –  COMPLAINT FOR MONEY DAMAGES

2.      Steelhead is an Oregon corporation with its principal place of business in Medford, Oregon, that operates, *inter alia*, as a bank as defined by ORS 706.008; and more specifically, as a factoring agent.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 inasmuch as the parties hereto exist in and primarily do business under the laws of different states; and the amount in dispute as demonstrated below exceeds $75,000.

4.      Venue herein is proper based on Steelhead's state of residence and primary place of business; the forum selection clause in the contract between Steelhead and SPT; and because evidence and witnesses of the events at issue are within this Court's territorial jurisdiction.

## ALLEGATIONS OF OPERATIVE FACT

5.      On or about March 15, 2019, Steelhead contracted with SPT under a Factoring Agreement ("Contract") to provide factoring services by which Steelhead would collect freight charges from Steelhead's freight brokers and shippers, and remit payment of the same, less defined and reasonable commissions, to SPT.  A copy of the Contract is attached hereto as **Exhibit 1** and incorporated by this reference.

6.      The Contract implicitly, explicitly and/or by operation of law, provides that Steelhead would invoice to and collect from SPT's shippers and freight brokers the full amount of sums stated in invoices which SPT remits to Steelhead.

7.      Between September 1 and November 28, 2021, SPT remitted to Steelhead invoices for freight and related charges to be issued to freight broker Nolan Transportation Group ("Nolan") totaling $76,479.75.  However, Steelhead invoiced Nolan only $50,708.75 of this sum, leaving a $25,771.00 shortfall which SPT has not received and is unable to collect from Nolan.  Spreadsheets detailing this invoicing from SPT and under-invoicing from Steelhead are attached as **Exhibit 2** and incorporated by this reference.

8.      At various times in 2021 through 2023, Steelhead withheld $124,912.38 in freight charges which Steelhead collected from SPT's customers, improperly asserting that Steelhead was

PAGE 2 – COMPLAINT FOR MONEY DAMAGES

entitled to withhold these sums as "escrow." In fact, Steelhead has no right or legal basis to withhold the said $124,912.38.

9.    At all times material, Steelhead knew or should have known that its failure to invoice Nolan the full charges stated in SPT invoices was improper; and further knew or should have known that it has no right to retain the $124,912.38 as "escrow."

10.    SPT has duly demanded that Steelhead refund to SPT $150,683.38, i.e., $25,771.00 in the under-invoiced sums to Nolan and $124,912.38 in the sums withheld as "escrow," but Steelhead has refused to so refund any sum to SPT.

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT

11.    SPT repeats and reasserts the allegations within paragraphs 1 through 10 hereof as if fully asserted herein.

12.    Steelhead has and at all times material had duties under the Contract to invoice Nolan the full sums stated in SPT's invoices; and to not withhold sums beyond the contractually agreed commissions in its payments to SPT of freight and ancillary charges which Steelhead collected from SPT's customers.

13.    By failing to invoice Nolan the full amounts of SPT's invoices; and by retaining improper sums in "escrow," Steelhead materially breached its Contract with SPT.

14.    Steelhead's breach of contract proximately caused SPT to incur damages in the amount of $150,683.38 as described above, which sum is liquid; plus costs and attorneys' fees, as provided by the Contract.

### PRAYER FOR RELIEF

WHEREFORE, SPT prays for relief against Steelhead as follows:

1.    For an award of SPT's principal damages in the amount of $150,683.38;

2.    For an award of prejudgment and post-judgment interest as provided by law;

3.    For an award of SPT's costs and reasonable attorneys' fees incurred by this action; and

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

135157.0003/9560849.2

4.     Such other relief as the Court may deem just and proper.

DATED:  November 28, 2023

LANE POWELL PC

By:   s/  Brian T. Kiolbasa
      Brian T. Kiolbasa, OSB No. 112890
      Telephone:  503.778.2100
      Attorneys for Plaintiff

LANE POWELL PC
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

135157.0003/9560849.2

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

**FACTORING AGREEMENT**

This Factoring Agreement is entered into on and effective as of March 15, 2019, by and between People's Bank of Commerce, an Oregon bank with offices at 3518 Heathrow Way Medford, OR 97504 ("Steelhead Finance"), and Seattle Premium Transportation LLC, a Washington limited liability company with Client Address at 918 S Horton St Ste 819 Seattle, WA 98134 ("Client") and 6020 50th St NE Marysville, WA 98270. Steelhead Finance transacts business under its company name, People's Bank of Commerce and the trade name Steelhead Finance. Client transacts business under its company name, Seattle Premium Transportation LLC and the trade name(s): Seattle Premium Logistics.

Client and Steelhead Finance agree that the following provisions and the provisions of Steelhead Finance's Factoring Terms and Conditions constitute the terms upon which Steelhead Finance shall act as Client's sole factor. Such terms and conditions may be updated by Steelhead Finance from time to time. Continued use of Steelhead Finances factoring services by Client for a period of ninety (90) days after Client is advised of any such update shall constitute Client's acceptance of the revised terms and conditions. In the event of conflict between this Factoring Agreement and Steelhead Finance's Factoring Terms and Conditions, this Factoring Agreement shall control.

**SECTION A.  Contractual Relationship**
Client agrees to present to Steelhead Finance for purchase Accounts arising from providing of services and/or sale, lease, license, assignment, or otherwise disposing of property in Client's business. Steelhead Finance, at its sole and absolute discretion, may purchase from time to time such Accounts as Steelhead Finance determines meet the standards and general requirements set by Steelhead Finance from time to time. Steelhead Finance is not obligated to buy any Account from Client. The Advance may be made in accordance with the Submittal Parameters. Steelhead Finance may advance to Client an Advance Percentage, as set forth in this Factoring Agreement, of the Net Face Value on any Account purchased, less any adjustments including but not limited to Reserve, fees, costs, Charge Backs, and Repurchases, and any other amounts owing to Steelhead Finance by Client.

**SECTION B.  Security Interest/Collateral**
The purchase of the Accounts of Client by Steelhead Finance is absolutely subject to the right to Recourse. In addition to the outright ownership of those Accounts purchased by Steelhead Finance, and as a further inducement for Steelhead Finance to enter into this Agreement, Client grants to Steelhead Finance, as Collateral for the payment and performance of any and all presently existing and hereafter arising obligations and liabilities of Client to Steelhead Finance, a security interest in the following described property, whether presently existing or hereafter arising, now owned or hereafter acquired, whether tangible or intangible, and wherever located:
All Accounts, accounts receivable, contract rights, chattel paper, electronic chattel paper, documents, instruments, deposit and commodity accounts, payment intangibles, letter-of-credit rights, investment property, cash and monies and whether on hand or on deposit, Reserves, reserve account balances, other deposits, general intangibles, improvements, fixtures, equipment, inventory (including without limitation goods consigned to Client), goods, software, all related supporting obligations and security, all other personal property, and all correspondence, books, and records relating to each and all of them, together with all proceeds, products, incomes, returns, additions, accessions, and substitutions with respect to any such Collateral.

**SECTION C.  Definitions**
Steelhead Finance's Factoring Terms and Conditions contain definitions of the capitalized terms appearing below. In addition, the capitalized terms defined in this section shall have the meanings indicated when used in Steelhead Finance's Factoring Terms and Conditions.

A.1.    "Advance Percentage" – ninety seven percent (97%).

A.2     "Factor Fee" – 3.00% of the Net Face Value of each Account. In addition, the Factor Fee on each purchased Account will increase by one tenth of one percent (0.1%) for each day an invoice exceeds the Recourse Date.

A.3     "Recourse Date" – With respect to any Account, the date which is 60 days from the date the invoice was purchased.

A.4     "Reserve Percentage" – ten percent (10%) of Monthly Factor Volume. May be built at a rate of one percent (1%) from each Advance or in a manner at Steelhead Finance's discretion.

A.5.    "Minimum Factor Volume" – forty thousand dollars ($40,000).



Initials    Initials

**Exhibit 1**
**Page 1 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

A.6.   "Rebate Settlement" **–** The last day of the month.
In the event that the Rebate Settlement is not a positive value, it may be processed bi-weekly.

A.7.   "Submittal Parameters" **–** The Advance may be made the next business day if the Accounts have been properly submitted to and accepted by Steelhead Finance prior to 8:00 PM Eastern Time. If the Accounts are properly submitted to Steelhead Finance after 8:00 PM Eastern Time, the Advance may be made in two (2) business days. Steelhead Finance may accept copies of the documentation described in Section 2.1 of the Factoring Terms and Conditions. If Customer requires any original documentation in order to remit payment, Client shall provide such original documentation to Steelhead Finance within 7 calendar days of the invoice purchase or the Account will be subject to Repurchase.
If the Accounts are properly submitted prior to 12:30 PM Eastern Time the Advance may be made the same business day if the Client notes "Expedited Advance" with their batch submittal and the Accounts are accepted by Steelhead Finance. If an Expedited Advance is requested by the Client and provided by Steelhead Finance, an Expedited Advance Fee on the Net Face Value of the Accounts purchased shall be charged.

## SECTION D.  Specific Modifications of Factoring Terms and Conditions

Exhibit "A" titled Factoring Agreement Rate Schedule shall be incorporated into the Factoring Terms and Conditions.

Exhibit "D" titled Volume-Based Fee Program shall be incorporated into the Factoring Terms and Conditions.

Exhibit "G" titled Fuel Advance Program shall be incorporated into the Factoring Terms and Conditions.

Section 9.2 of the Factoring Terms and Conditions is hereby modified by reducing the Termination Timeframe from ninety (90) days to seventy five (75) days.

## SECTION E.  Signatures
**Steelhead Finance's Factoring Terms and Conditions, provided to Client with this Factoring Agreement are incorporated herein by this reference as though fully set forth herein.** This Factoring Agreement may be signed in any number of counterparts, each of which shall be original, with the same effect as if all signatures were upon the same instrument. Signature may be affixed manually or digitally and delivery of an executed counterpart of the signature page to this Factoring Agreement by facsimile or by electronic means shall be as effective as delivery of a manually executed counterpart, and any party delivering such an executed counterpart by facsimile or electronic means to any other party shall thereafter also promptly deliver a manually executed counterpart to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability or binding effect of this Factoring Agreement.

Executed this 15th day of March, 2019,

**SEATTLE PREMIUM TRANSPORTATION LLC**

_Mandeep Singh Gill_ | _karmjit Singh_
Mandeep Singh Gill, Member | Karmjit Singh, Member

Accepted this 15th day of March, 2019, at Medford, Oregon.
**PEOPLE'S BANK OF COMMERCE**
**By**:  _William D. Stewart_
**Name:  William D. Stewart**
**Title:    Executive Vice President**

_MSG_  _kS_
Initials  Initials

**Exhibit 1**
**Page 2 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

# EXHIBIT "A"

<u>Factoring Agreement Rate Schedule</u>

| **As Utilized, Fees:** | **Unit Price:** |
|---|---|
| Application Fee | No Charge |
| ACH (Direct Deposit) | $5.00 |
| Billed Only Fee | No Charge |
| EFS Fuel Transfers | $10.00 |
| Wire Transfers | $25.00 |
| New Customer Credit Search | No Charge |
| Invoice Processing Fee | $1.00 |
| Expedited Advance Fee | *1.00% or $25.00 |
| Expedited Advance Fee using ACH | *0.50% or $10.00 |

\* Indicates a charge of whichever sum is larger.



DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

# EXHIBIT "D"

### VOLUME-BASED FEE PROGRAM

Incorporated into People's Bank of Commerce Factoring Terms and Conditions as referenced in Section D of the Factoring Agreement ("Agreement") dated March 15, 2019 between People's Bank of Commerce, doing business as Steelhead Finance ("Steelhead Finance") and Seattle Premium Transportation LLC ("Client").

1. **Definitions**
   1.1. "Average Monthly Factor Volume" - means the sum of each consecutive Monthly Factor Volume divided by the total number of such months.
   1.2. "Monthly Factor Volume" – means the total dollar amount of Client's Accounts purchased during one calendar month.

2. **Volume-Based Fee Adjustment**
   2.1.1. The Client may request, in writing, a change to their Factor Fee if they are not in Default under any Obligations to Steelhead Finance.
   2.1.2. Upon such request Steelhead Finance will calculate the Client's Average Monthly Factor Volume over the prior 3 months and the Client's Monthly Factor Volume for the prior month. The lesser of those two calculations shall be defined as the "Monthly Factor Volume Amount".
   2.1.3. If the Monthly Factor Volume Amount falls into a range in the Factor Fee Chart below that provides a Factor Fee that is less than Client's existing Factor Fee, Client's Factor Fee shall be adjusted in accordance with the chart below.
   2.1.4. If it is determined that the Client is not eligible for an adjustment at that time, the Client must abide by section 2.1.1 for a future consideration.
   2.2. If, at any time, the Client's Monthly Factor Volume for the prior month falls into a range in the Monthly Factor Volume Amount of the Factor Fee Chart below that identifies a Factor Fee greater than Client's existing Factor Fee, Steelhead Finance may adjust the Factor Fee to the Factor Fee reflective of the Client's prior month Monthly Factor Volume, according to the Factor Fee Chart below.

### FACTOR FEE CHART

| MONTHLY FACTOR VOLUME AMOUNT | FACTOR FEE |
|---|---|
| $100,001 and over | 2.50% of the Net Face Value of each Account. In addition, the Factor Fee on each purchased Account will increase by one tenth of one percent (0.1%) for each day an invoice exceeds the Recourse Date. |
| $100,000 and under | 3.00% of the Net Face Value of each Account. In addition, the Factor Fee on each purchased Account will increase by one tenth of one percent (0.1%) for each day an invoice exceeds the Recourse Date. |

MSG     kS
Initials   Initials

**Exhibit 1**
**Page 4 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

# EXHIBIT "G"

### FUEL ADVANCE PROGRAM

This Exhibit G is Incorporated into the Terms and Conditions of the Factoring Agreement ("Factoring Agreement") in Section D. The Factoring Agreement is dated March 15, 2019 between People's Bank of Commerce, dba Steelhead Finance ("Steelhead Finance") and Seattle Premium Transportation LLC ("Client").

1. Client requests that Steelhead Finance provide funding advances to Client for loads where Client is the carrier, the cargo has been loaded on the trailer but not yet delivered, for the purpose of obtaining fuel for the load's delivery, defined herein as a "Fuel Advance". For a Fuel Advance consideration, Client will submit to Steelhead Finance a fully executed Fuel Advance Request Form and rate confirmation, and an associated Bill of Lading (BOL), with the signature of the shipper and driver, indicating the cargo has loaded for shipment. Steelhead Finance may advance to Client, pursuant to the terms of this exhibit and the Factoring Agreement, 50% of the load amount, up to $2,000.00, for Client to use toward fuel in hauling the load, so long as Client is not in default.

   The following are conditions for a Fuel Advance consideration:
   - Requests for Fuel Advances are accepted Monday through Friday until 7:00 PM ET
   - Generic BOL's are not permitted
   - No additional advances (from any other party) are permitted on the load
   - Steelhead Finance may require verification of the load

   Client agrees to pay Steelhead Finance a fee for this Fuel Advance of $25.00 for funding up to $1,000 and $50.00 for funding of $1,000.00 or greater. This fee and all other fees associated with this transaction shall be deducted from the Fuel Advance itself.

   Client agrees to submit a copy (or original if required) of the BOL containing the receiver's signature within 48 hours of the load's delivery and to submit the invoice for factoring, in accordance with the Factoring Agreement, within 7 days of delivery.

2. Client warrants that the information provided to Steelhead Finance by Client to provide a Fuel Advance is true and accurate. Client bears the full responsibility of any errors in Fuel Advances regardless of whether the errors are a result of the information provided to Steelhead Finance by Client or by any other party.

3. Client agrees to indemnify and hold Steelhead Finance harmless from any claims or disputes arising from the load. Client remains fully responsible to Steelhead Finance for all amounts advanced for Fuel Advances, plus accrued fees, regardless of whether or not Steelhead Finance chooses to purchase the underlying invoice.

MSG     kS
Initials     Initials

**Exhibit 1**
**Page 5 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

**PERSONAL GUARANTY OF COMMERCIAL OBLIGATION**


**CLIENT:**     Seattle Premium Transportation LLC
                918 S Horton St Ste 819
                Seattle, WA 98134


**STEELHEAD
FINANCE:**      People's Bank of Commerce
                dba Steelhead Finance
                3518 Heathrow Way
                Medford, OR 97504


**GUARANTOR:**  Mandeep Singh Gill


**AMOUNT OF GUARANTY**.  The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY**.  For good and valuable consideration Mandeep Singh Gill ("Guarantor") absolutely and unconditionally, and jointly, and severally guarantees and promises to pay to People's Bank of Commerce, having an assumed business name of Steelhead Finance ("Steelhead Finance") or its order, in legal tender of the United States of America, the indebtedness (as that term is defined below) of Seattle Premium Transportation LLC ("Client") to Steelhead Finance on the terms and conditions set forth in this Guaranty.  Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS**.  The following words shall have the following meanings when used in this Guaranty:

**Client**.  The word "Client" means Seattle Premium Transportation LLC.
**Guarantor**.  The word "Guarantor" means Mandeep Singh Gill.
**Guaranty**.  The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Steelhead Finance dated March 15, 2019.
**Indebtedness**.  The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Client's liabilities, obligations, debts, and indebtedness to Steelhead Finance, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdrafts indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Client, or any of them, and any present or future judgments against Client, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Client may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Client for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.
**Steelhead Finance**.  The word "Steelhead Finance" means People's Bank of Commerce and its assumed business name of Steelhead Finance, its successors and assigns.
**Related Documents**.  The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements, and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**NATURE OF GUARANTY**.  Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force.  Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness.  Accordingly, no payments made upon the Indebtedness will discharge or diminish to continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY**.  This Guaranty will take effect when received by Steelhead Finance without the necessity of any acceptance by Steelhead Finance, or any notice to Guarantor or to Client, and will continue in full force until all Indebtedness incurred or contracted before receipt by Steelhead Finance of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full.  If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing.  Guarantor's written notice of revocation must be mailed to Steelhead Finance, by certified mail, at the address of Steelhead Finance listed above or such other place as Steelhead Finance may designate in writing.  Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Steelhead Finance of Guarantor's written revocation.  For this purpose and without limitation, the term "new indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined, or not due and which later becomes absolute, liquidated, determined, or due.  This Guaranty will continue to bind Guarantor

_MSG_
Initial

**Exhibit 1**
**Page 6 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

for all Indebtedness incurred by Client or committed by Steelhead Finance prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions, or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Steelhead Finance's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Steelhead Finance from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors, and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO STEELHEAD FINANCE. Guarantor authorizes Steelhead Finance, either before or after any revocation hereof, without notice or demand and with lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Client, to lease equipment or other goods to Client, or otherwise to extend additional credit to Client; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more time the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases or decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail, or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Client's sureties, endorsers, or other guarantors on any terms or in any manner Steelhead Finance may choose; (e) to determine how, when, and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Steelhead Finance in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.**

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Steelhead Finance that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) This Guaranty is executed at Client's request and not at the request of Steelhead Finance; (c) Guarantor has full power, right, and authority to enter into this Guaranty; (d) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree, or order applicable to Guarantor; (e) Guarantor has not and will not, without prior written consent of Steelhead Finance, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Steelhead Finance's request, Guarantor will provide to Steelhead Finance financial and credit information in form acceptable to Steelhead Finance, and all such financial information which currently has been, and all future financial information which will be provided to Steelhead Finance is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Steelhead Finance and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Steelhead Finance has made no representation to Guarantor as to the creditworthiness of Client; (j) Guarantor has established adequate means of obtaining from Client on a continuing basis information regarding Client's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Steelhead Finance shall have no obligation to disclose to Guarantor any information or documents acquired by Steelhead Finance in the course of its relationship with Client.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Steelhead Finance (a) to continue lending money or to extend other credit to Client; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Client, Steelhead Finance, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Client or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Steelhead Finance from Client, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Steelhead Finance from Client or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Steelhead Finance's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Client shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid by fully secured by collateral pledged by Client, Guarantor hereby forever waives and relinquishes in favor of Steelhead Finance and Client, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Client, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Client within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights of defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Steelhead Finance from bringing any action, including a claim for deficiency, against Guarantor, before or after Steelhead Finance's commencement or completion of any foreclosure action, either judicially or by exercise of a power of

Guaranty - Page 2 of 5
Seattle Premium Transportation LLC

_MSG_
Initial

**Exhibit 1
Page 7 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

sale; (b) any election of remedies by Steelhead Finance which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Client for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Client, of any other guarantor, or of any other person, or by reason of the cessation of Client's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Steelhead Finance against Guarantor is commenced there is outstanding Indebtedness of Client to Steelhead Finance which is not barred by any applicable statute of limitations; (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Client, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Steelhead Finance is forced to remit the amount of that payment to Client's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert of claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment, or similar right, whether such claim, demand, or right may be asserted by the Client, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS**. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**STEELHEAD FINANCE'S RIGHT OF SETOFF**. In addition to all liens upon and rights of setoff against the moneys, securities, or other property of Guarantor given to Steelhead Finance by law, Steelhead Finance shall have, with respect to Guarantor's obligations to Steelhead Finance under this Guaranty and to the extent permitted by law, a contractual possessory security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Steelhead Finance all of Guarantor's rights, title, and interest in and to, all deposits, moneys, securities, and other property of Guarantor now or hereafter in the possession of or on deposit with Steelhead Finance, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Steelhead Finance or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Steelhead Finance.

**SUBORDINATION OF CLIENT'S DEBTS TO GUARANTOR**. Guarantor agrees that the Indebtedness of Client to Steelhead Finance, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Client, whether or not Client becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Client, upon any account whatsoever, to any claim that Steelhead Finance may now or hereafter have against Client. In the event of insolvency and consequent liquidation of the assets of Client, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Client applicable to the payment of the claims of both Steelhead Finance and Guarantor shall be paid to Steelhead Finance and shall be first applied by Steelhead Finance to the Indebtedness of Client to Steelhead Finance. Guarantor does hereby assign to Steelhead Finance all claims which it may have or acquire against Client or against any assignee or trustee in bankruptcy of Client; provided however, that such assignment shall be effective only for the purpose of assuring to Steelhead Finance full payment in legal tender of the Indebtedness. If Steelhead Finance so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Client to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Steelhead Finance. Guarantor agrees, and Steelhead Finance hereby is authorized, in the same of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Steelhead Finance deems necessary or appropriate to perfect, preserve, and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS**. The following miscellaneous provisions are a part of this Guaranty:

**Amendments**. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alternation or amendment.

**Applicable Law**. This Guaranty has been delivered to Steelhead Finance and accepted by Steelhead Finance in the State of Oregon. If there is a lawsuit, Guarantor agrees upon Steelhead Finance's request to submit to the jurisdiction of the courts of Jackson County, State of Oregon. Subject to the provisions on arbitration, this Guaranty shall be governed by and construed in accordance with the State of Oregon.

**Arbitration.** Any dispute, controversy, or claim arising out of or relating to this Agreement shall be settled by arbitration. Unless the parties otherwise agree, the arbitration shall be administered in the same manner as the court ordered arbitrations then held by the Circuit Court of the State of Oregon for Jackson County and by a single arbitrator. In the event the parties cannot agree on a single arbitrator, then each party shall appoint an arbitrator and the two so selected shall appoint a third. These three arbitrators shall have authority to assign resolution of this case to one panel of all three arbitrators or may appoint one of their members as the sole arbitrator to hear and decide all issues presented by the parties. Judgment on the award rendered by the arbitrator may be entered in the circuit court in the county in which the arbitration occurs, and the resolution of the disputed matter as determined by the arbitrator shall be binding on the parties. This arbitration shall include the following:


Initial

**Exhibit 1**
**Page 8 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

(a)      A party may, without inconsistency with this Agreement, seek from a court any interim or provisional relief that may be necessary to protect the rights or property of that party pending the establishment of the arbitration (or pending the arbitrator's determination of the merits of the dispute, controversy, or claim).

(b)      The arbitrator shall have authority to issue preliminary and other equitable relief.

(c)      Discovery proceedings of the type provided by the Oregon Rules of Civil Procedure shall be permitted both in advance of and during recesses of the arbitration hearings.  Any dispute relating to such discovery shall be resolved by the arbitrator.

(d)      The arbitrator shall have the discretion to order a prehearing exchange of information by the parties and an exchange of summaries of testimony of proposed witnesses.

(e)      The arbitrator shall have the authority to award any remedy or relief that an Oregon court could order or grant, including, without limitation, specific performance of any obligation created under this Agreement, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process, except that the arbitrator shall not have authority to award punitive damages or any other amount for the purpose of imposing a penalty as opposed to compensating for actual damage suffered or loss incurred.

(f)      The award shall be in writing, shall be signed by the arbitrator, and shall include a statement regarding the disposition of any claim.  The award shall be kept confidential to the fullest extent permitted by law.

**Attorneys' Fees; Expenses**.  Guarantor agrees to pay upon demand all of Steelhead Finance's costs and expenses, including attorneys' fees and Steelhead Finance's legal expenses, incurred in connection with the enforcement of this Guaranty. Steelhead Finance may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Steelhead Finance's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Credit Reports.**      Guarantor hereby expressly authorizes Steelhead Finance to request and obtain a credit report on Guarantor on the following occasions, (1) prior to making advances that will be guaranteed by this Personal Guaranty, (2) annually so long as any guaranteed obligation by client remains unpaid or unperformed, (3) in the event of a default of the guaranteed obligation or this guaranty, (4) at any time that Steelhead Finance deems themselves in jeopardy of a default under either the obligations herein guaranteed or any other then outstanding obligation of guarantor to Steelhead Finance.  All such credit reports shall be at the expense of Steelhead Finance.

**Notices**.  All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent to telefacsimile, and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a national recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing.  All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Steelhead Finance as provided above in the section titled "DURATION OF GUARANTY."  If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors.  For notice purposes, Guarantor agrees to keep Steelhead Finance informed at all times of Guarantor's current address.

**Interpretation**.  In all cases where there is more than one Client or Guarantor, then all words in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Client named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Client" and "Guarantor" respectively shall mean all and any one or more of them.  The words "Guarantor," "Client," and "Steelhead Finance" include the heirs, successors, assigns, and transferees of each of them.  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.  If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable.  If any one or more of Client or Guarantor are corporations or partnerships, it is not necessary for Steelhead Finance to inquire into the powers of Client or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver**.  Steelhead Finance shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Steelhead Finance.  No delay or omission on the part of Steelhead Finance in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Steelhead Finance of a provision of this Guaranty shall not prejudice or constitute a waiver of Steelhead Finance's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.  No prior waiver by Steelhead Finance, nor any course of dealing between Steelhead Finance and Guarantor, shall constitute a waiver of any of Steelhead Finance's rights or of any of Guarantor's obligations as to any future transactions.  Whenever the consent of Steelhead Finance is required under this Guaranty, the granting of such consent by Steelhead Finance in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Steelhead Finance.

**Jurisdiction and Venue**:  Guarantor agrees that this Guaranty is entered into in the State of Oregon and that all sums due hereunder are payable to Steelhead Finance in Jackson County, State of Oregon and Guarantor agrees and submits to the jurisdiction of the courts of the State of Oregon,  with proper venue in Jackson County for purposes of enforcement of this Guaranty.

MSG
_____
Initial

**Exhibit 1**
**Page 9 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS GUARANTY AND HAVING BEEN ADVISED TO SEEK THE ADVICE OF AN ATTORNEY OF GUARANTOR'S CHOOSING ON THE LEGAL EFFECT OF THIS GUARANTY.   IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO STEELHEAD FINANCE AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY."  NO FORMAL ACCEPTANCE BY STEELHEAD FINANCE IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

THIS GUARANTY IS DATED MARCH 15, 2019.

*Mandeep Singh Gill*
_____
Mandeep Singh Gill

Guaranty - Page 5 of 5
Seattle Premium Transportation LLC

*MSG*
_____
Initial

**Exhibit 1**
**Page 10 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

**PERSONAL GUARANTY OF COMMERCIAL OBLIGATION**

**CLIENT:**    Seattle Premium Transportation LLC
918 S Horton St Ste 819
Seattle, WA 98134

**STEELHEAD FINANCE:**    People's Bank of Commerce
dba Steelhead Finance
3518 Heathrow Way
Medford, OR 97504

**GUARANTOR:**    Karmjit Singh

**AMOUNT OF GUARANTY**. The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY**. For good and valuable consideration Karmjit Singh ("Guarantor") absolutely and unconditionally, and jointly, and severally guarantees and promises to pay to People's Bank of Commerce, having an assumed business name of Steelhead Finance ("Steelhead Finance") or its order, in legal tender of the United States of America, the indebtedness (as that term is defined below) of Seattle Premium Transportation LLC ("Client") to Steelhead Finance on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS**. The following words shall have the following meanings when used in this Guaranty:

**Client**. The word "Client" means Seattle Premium Transportation LLC.
**Guarantor**. The word "Guarantor" means Karmjit Singh.
**Guaranty**. The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Steelhead Finance dated March 15, 2019.
**Indebtedness**. The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Client's liabilities, obligations, debts, and indebtedness to Steelhead Finance, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdrafts indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Client, or any of them, and any present or future judgments against Client, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Client may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Client for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.
**Steelhead Finance.** The word "Steelhead Finance" means People's Bank of Commerce. and its assumed business name of Steelhead Finance, its successors and assigns.
**Related Documents**. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements, and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**NATURE OF GUARANTY**. Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish to continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY**. This Guaranty will take effect when received by Steelhead Finance without the necessity of any acceptance by Steelhead Finance, or any notice to Guarantor or to Client, and will continue in full force until all Indebtedness incurred or contracted before receipt by Steelhead Finance of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Steelhead Finance, by certified mail, at the address of Steelhead Finance listed above or such other place as Steelhead Finance may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Steelhead Finance of Guarantor's written revocation. For this purpose and without limitation, the term "new indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined, or not due and which later becomes absolute, liquidated, determined, or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Client or committed by Steelhead Finance prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions, or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Steelhead Finance's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate



Initial

**Exhibit 1**
**Page 11 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Steelhead Finance from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors, and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO STEELHEAD FINANCE. Guarantor authorizes Steelhead Finance, either before or after any revocation hereof, without notice or demand and with lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Client, to lease equipment or other goods to Client, or otherwise to extend additional credit to Client; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more time the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases or decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail, or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Client's sureties, endorsers, or other guarantors on any terms or in any manner Steelhead Finance may choose; (e) to determine how, when, and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Steelhead Finance in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and  (h) to assign or transfer this Guaranty in whole or in part.**

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Steelhead Finance that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) This Guaranty is executed at Client's request and not at the request of Steelhead Finance; (c) Guarantor has full power, right, and authority to enter into this Guaranty; (d) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree, or order applicable to Guarantor; (e) Guarantor has not and will not, without prior written consent of Steelhead Finance, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Steelhead Finance's request, Guarantor will provide to Steelhead Finance financial and credit information in form acceptable to Steelhead Finance, and all such financial information which currently has been, and all future financial information which will be provided to Steelhead Finance is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Steelhead Finance and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Steelhead Finance has made no representation to Guarantor as to the creditworthiness of Client; (j) Guarantor has established adequate means of obtaining from Client on a continuing basis information regarding Client's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Steelhead Finance shall have no obligation to disclose to Guarantor any information or documents acquired by Steelhead Finance in the course of its relationship with Client.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Steelhead Finance (a) to continue lending money or to extend  other credit to Client; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Client, Steelhead Finance, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Client or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Steelhead Finance from Client, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Steelhead Finance from Client or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Steelhead Finance's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Client shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid by fully secured by collateral pledged by Client, Guarantor hereby forever waives and relinquishes in favor of Steelhead Finance and Client, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Client, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Client within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights of defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Steelhead Finance from bringing any action, including a claim for deficiency, against Guarantor, before or after Steelhead Finance's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Steelhead Finance which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Client for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Client, of any other guarantor, or of any other person, or by reason of the cessation of Client's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any



Initial

**Exhibit 1
Page 12 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

action or suit brought by Steelhead Finance against Guarantor is commenced there is outstanding Indebtedness of Client to Steelhead Finance which is not barred by any applicable statute of limitations; (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.  If payment is made by Client, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Steelhead Finance is forced to remit the amount of that payment to Client's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert of claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment, or similar right, whether such claim, demand, or right may be asserted by the Client, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS**.  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**STEELHEAD FINANCE'S RIGHT OF SETOFF.**  In addition to all liens upon and rights of setoff against the moneys, securities, or other property of Guarantor given to Steelhead Finance by law, Steelhead Finance shall have, with respect to Guarantor's obligations to Steelhead Finance under this Guaranty and to the extent permitted by law, a contractual possessory security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Steelhead Finance all of Guarantor's rights, title, and interest in and to, all deposits, moneys, securities, and other property of Guarantor now or hereafter in the possession of or on deposit with Steelhead Finance, whether held in a general or special account or deposit, whether held jointly with someone else or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts.  Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor.  No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Steelhead Finance or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing.  Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Steelhead Finance.

**SUBORDINATION OF CLIENT'S DEBTS TO GUARANTOR**.  Guarantor agrees that the Indebtedness of Client to Steelhead Finance, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Client, whether or not Client becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Client, upon any account whatsoever, to any claim that Steelhead Finance may now or hereafter have against Client.  In the event of insolvency and consequent liquidation of the assets of Client, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Client applicable to the payment of the claims of both Steelhead Finance and Guarantor shall be paid to Steelhead Finance and shall be first applied by Steelhead Finance to the Indebtedness of Client to Steelhead Finance.  Guarantor does hereby assign to Steelhead Finance all claims which it may have or acquire against Client or against any assignee or trustee in bankruptcy of Client; provided however, that such assignment shall be effective only for the purpose of assuring to Steelhead Finance full payment in legal tender of the Indebtedness.  If Steelhead Finance so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Client to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Steelhead Finance.  Guarantor agrees, and Steelhead Finance hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Steelhead Finance deems necessary or appropriate to perfect, preserve, and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS**.  The following miscellaneous provisions are a part of this Guaranty:

**Amendments**.  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty.  No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alternation or amendment.

**Applicable Law**.  This Guaranty has been delivered to Steelhead Finance and accepted by Steelhead Finance in the State of Oregon.  If there is a lawsuit, Guarantor agrees upon Steelhead Finance's request to submit to the jurisdiction of the courts of Jackson County, State of Oregon.  Subject to the provisions on arbitration, this Guaranty shall be governed by and construed in accordance with the State of Oregon.

**Arbitration**.  Any dispute, controversy, or claim arising out of or relating to this Agreement shall be settled by arbitration.  Unless the parties otherwise agree, the arbitration shall be administered in the same manner as the court ordered arbitrations then held by the Circuit Court of the State of Oregon for Jackson County and by a single arbitrator.  In the event the parties cannot agree on a single arbitrator, then each party shall appoint an arbitrator and the two so selected shall appoint a third.  These three arbitrators shall have authority to assign resolution of this case to the panel of all three arbitrators or may appoint one of their members as the sole arbitrator to hear and decide all issues presented by the parties.  Judgment on the award rendered by the arbitrator may be entered in the circuit court in the county in which the arbitration occurs, and the resolution of the disputed matter as determined by the arbitrator shall be binding on the parties.  This arbitration shall include the following:

(a)     A party may, without inconsistency with this Agreement, seek from a court any interim or provisional relief that may be necessary to protect the rights or property of that party pending the establishment of the arbitration (or pending the arbitrator's determination of the merits of the dispute, controversy, or claim).

(b)     The arbitrator shall have authority to issue preliminary and other equitable relief.

Guaranty - Page 3 of 5
Karmjit Singh
Seattle Premium Transportation LLC


Initial

**Exhibit 1**
**Page 13 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

(c)     Discovery proceedings of the type provided by the Oregon Rules of Civil Procedure shall be permitted both in advance of and during recesses of the arbitration hearings.  Any dispute relating to such discovery shall be resolved by the arbitrator.

(d)     The arbitrator shall have the discretion to order a prehearing exchange of information by the parties and an exchange of summaries of testimony of proposed witnesses.

(e)     The arbitrator shall have the authority to award any remedy or relief that an Oregon court could order or grant, including, without limitation, specific performance of any obligation created under this Agreement, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process, except that the arbitrator shall not have authority to award punitive damages or any other amount for the purpose of imposing a penalty as opposed to compensating for actual damage suffered or loss incurred.

(f)     The award shall be in writing, shall be signed by the arbitrator, and shall include a statement regarding the disposition of any claim.  The award shall be kept confidential to the fullest extent permitted by law.

**Attorneys' Fees; Expenses**.  Guarantor agrees to pay upon demand all of Steelhead Finance's costs and expenses, including attorneys' fees and Steelhead Finance's legal expenses, incurred in connection with the enforcement of this Guaranty. Steelhead Finance may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Steelhead Finance's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Credit Reports.**     Guarantor hereby expressly authorizes Steelhead Finance to request and obtain a credit report on Guarantor on the following occasions, (1) prior to making advances that will be guaranteed by this Personal Guaranty, (2) annually so long as any guaranteed obligation by client remains unpaid or unperformed, (3) in the event of a default of the guaranteed obligation or this guaranty, (4) at any time that Steelhead Finance deems themselves in jeopardy of a default under either the obligations herein guaranteed or any other then outstanding obligation of guarantor to Steelhead Finance.  All such credit reports shall be at the expense of Steelhead Finance.

**Notices**.  All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent to telefacsimile, and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a national recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing.  All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Steelhead Finance as provided above in the section titled "DURATION OF GUARANTY."  If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors.  For notice purposes, Guarantor agrees to keep Steelhead Finance informed at all times of Guarantor's current address.

**Interpretation**.  In all cases where there is more than one Client or Guarantor, then all words in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Client named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Client" and "Guarantor" respectively shall mean all and any one or more of them.  The words "Guarantor," "Client," and "Steelhead Finance" include the heirs, successors, assigns, and transferees of each of them.  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.  If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable.  If any one or more of Client or Guarantor are corporations or partnerships, it is not necessary for Steelhead Finance to inquire into the powers of Client or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver**.  Steelhead Finance shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Steelhead Finance.  No delay or omission on the part of Steelhead Finance in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Steelhead Finance of a provision of this Guaranty shall not prejudice or constitute a waiver of Steelhead Finance's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.  No prior waiver by Steelhead Finance, nor any course of dealing between Steelhead Finance and Guarantor, shall constitute a waiver of any of Steelhead Finance's rights or of any of Guarantor's obligations as to any future transactions.  Whenever the consent of Steelhead Finance is required under this Guaranty, the granting of such consent by Steelhead Finance in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Steelhead Finance.

**Jurisdiction and Venue**:  Guarantor agrees that this Guaranty is entered into in the State of Oregon and that all sums due hereunder are payable to Steelhead Finance in Jackson County, State of Oregon and Guarantor agrees and submits  to the jurisdiction of the courts of the State of Oregon,  with proper venue in Jackson County for purposes of enforcement of this Guaranty.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS GUARANTY AND HAVING BEEN ADVISED TO SEEK THE ADVICE OF AN ATTORNEY OF GUARANTOR'S CHOOSING ON THE LEGAL EFFECT OF THIS GUARANTY.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO STEELHEAD FINANCE AND THAT THE

Guaranty - Page 4 of 5
Karmjit Singh
Seattle Premium Transportation LLC


Initial

**Exhibit 1**
**Page 14 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY STEELHEAD FINANCE IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

THIS GUARANTY IS DATED MARCH 15, 2019.

_Karmjit Singh_
_____
Karmjit Singh

Guaranty - Page 5 of 5
Karmjit Singh
Seattle Premium Transportation LLC

_kS_
_____
Initial

**Exhibit 1**
**Page 15 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

**CERTIFICATION OF MEMBERS**
**OF**
**SEATTLE PREMIUM TRANSPORTATION LLC**

To:    People's Bank of Commerce
        dba Steelhead Finance
        3518 Heathrow Way
        Medford, Oregon 97504

In order to induce you to extend a factoring accommodation to the limited liability company above named, and to continue to do so, the undersigned members of said limited liability company warrant, represent, and covenant as follows:

1.   The exact title of the limited liability company is:

**Seattle Premium Transportation LLC**

2.   The limited liability company was organized on July 13, 2015, under the laws of Washington, and is in good standing under those laws.

3.   The chief place of business of the limited liability company, being the place at which the limited liability company maintains its books and records pertaining to accounts, contract rights, inventory, etc., is located at:

918 S Horton St Ste 819
Seattle, WA 98134

4.   There is no provision in the articles of organization of the limited liability company or in the laws of the State of its organization, requiring any vote or consent of members to authorize the mortgage or pledge of or creation of a security interest in any assets of the limited liability company. Such power is vested exclusively in its members. A duly passed "Action by Unanimous Written Consent" authorizing same is, nonetheless, attached hereto and signed by all members of the limited liability company.

5.   The members of the limited liability company, and their respective titles and signatures, are as follows:

| Mandeep Singh Gill | Member | *Mandeep Singh Gill* |
|---|---|---|
| Name | Title | Signature |
| Karmjit Singh | Member | *Karmjit Singh* |
| Name | Title | Signature |

**If there are any owners not listed above, enter their full name and percent of ownership:**

| | |
|---|---|
| Name | % of ownership |

Except as indicated below, each of said members has signatory powers as to all transactions with the limited liability company, specifically including such powers as to all transactions reasonably contemplated in connection with the limited liability company's Factoring Agreement entered into with you on March 15, 2019.
**Exceptions:   NONE.**

6.   Prompt written notice will be given to you of any change or amendment with respect to any of the foregoing matters. Until such notice is received by you, you shall be entitled to rely upon the foregoing in all respects.

| Mandeep Singh Gill | Member | *Mandeep Singh Gill* |
|---|---|---|
| Name | Title | Signature |
| Karmjit Singh | Member | *Karmjit Singh* |
| Name | Title | Signature |

**Exhibit 1**
**Page 16 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

## UNANIMOUS WRITTEN CONSENT BY MEMBERS OF LIMITED LIABILITY COMPANY

The undersigned, being all of the members of Seattle Premium Transportation LLC (the "Company"), a limited liability company organized under the laws of the State of Washington, hereby unanimously adopt the following resolution:

**RESOLVED THAT**:  The Company through each and any of its officers, members, and managers is hereby authorized and directed to execute and deliver to People's Bank of Commerce, doing business as Steelhead Finance ("STEELHEAD") the following documents:

  a.   A Factoring Agreement between this Company and STEELHEAD providing for the sale of this Company's accounts receivable to STEELHEAD, and granting a security interest to STEELHEAD in the Company's assets as security for the obligations of the Company to STEELHEAD;

  b.   Any and all other documents and agreements not inconsistent therewith as may from time to time be requested by STEELHEAD; and

  c.   Any modification, renewals, and extensions of any of them.

The undersigned also each hereby certify to STEELHEAD that nothing contained in the Operating Agreement of this Company, the laws of the Company's state or organization, or any other records of this Company prohibits the execution of the aforementioned agreements and documents.

DATED as of March 15th, 2019.


_Mandeep Singh Gill_
Mandeep Singh Gill, Member


_Karmjit Singh_
Karmjit Singh, Member

**Exhibit 1**
**Page 17 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

| Form **8821** | **Tax Information Authorization** | OMB No. 1545-1165 |
|---|---|---|

Form **8821**

(Rev. March 2015)

Department of the Treasury
Internal Revenue Service

**Tax Information Authorization**

▶ Information about Form 8821 and its instructions is at *www.irs.gov/form8821*.

▶ Do not sign this form unless all applicable lines have been completed.

▶ Do not use Form 8821 to request copies of your tax returns
or to authorize someone to represent you.

OMB No. 1545-1165

**For IRS Use Only**

Received by:

Name _____
Telephone _____
Function _____
Date _____

**1  Taxpayer information.** Taxpayer must sign and date this form on line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| Seattle Premium Transportation LLC<br>918 S Horton St Ste 819<br>Seattle, WA 98134 | 47-4502004 |
| | Daytime telephone number: 360-595-8166    Plan number (if applicable) |

**2  Appointee.** If you wish to name more than one appointee, attach a list to this form. **Check here if a list of additional appointees is attached** ▶ ☐

| Name and address | |
|---|---|
| Steelhead Finance, LLC<br>3518 Heathrow Way<br>Medford, OR 97504 | CAF No. 0312-84229R<br>PTIN<br>Telephone No. 541-773-3377<br>Fax No. 541-773-3407<br>Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

**3  Tax Information.** Appointee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number<br>(1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| Withholding, Civil Penalty, Excise Tax | 941,944,945,6672,<br>CIV PEN, 720 | 1,2,3,4th quarters of 2015-2022 | Retn/Acct Status, Bal Due, Transcripts |
| Unemployment, Heavy Use, Civil Penalty | 940, 2290, CIV PEN | 2015-2022 | Retn/Acct Status, Bal Due, Transcripts |
| Income | 1065 | 2015-2022 | Retn/Acct Status, Bal Due, Transcripts |

**4  Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip lines 5 and 6 . . . . . . ▶ ☐

**5  Disclosure of tax information** (you **must** check a box on line 5a or 5b unless the box on line 4 is checked):

**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

**Note.** Appointees will no longer receive forms, publications, and other related materials with the notices.

**b** If you do not want any copies of notices or communications sent to your appointee, check this box . . . ▶ ☐

**6  Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box is not checked, the IRS will automatically revoke all prior Tax Information Authorizations on file unless you check the line 6 box and attach a copy of the Tax Information Authorization(s) that you want to retain. . . . . . . . . . . ▶ ☐

To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 6 instructions.

**7  Signature of taxpayer.** If signed by a corporate officer, partner, guardian, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ **IF NOT COMPLETE, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

▶ **DO NOT SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| *Mandeep Singh Gill* | 3/18/2019 |
|---|---|
| Signature | Date |
| Mandeep Singh Gill | Member |
| Print Name | Title (if applicable) |

**For Privacy Act and Paperwork Reduction Act Notice, see instructions.**    Cat. No. 11596P    Form **8821** (Rev. 3-2015)

**Exhibit 1**
**Page 18 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8



# FACTORING TERMS AND CONDITIONS

## 1. DEFINITIONS

Capitalized terms appearing in these terms and conditions shall have the following meanings:

1.1. "Account" means any right to payment for services rendered or to be rendered or for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, and which right is not evidenced by an instrument or chattel paper. Every invoice of Client to a Customer is a separate Account, but an Account may exist without any invoice therefor.

1.2. "Advance" means the amount initially forwarded to Client by Steelhead Finance for the purchase of Accounts.

1.3. "Agreement" means the Factoring Agreement entered into by Steelhead Finance and Client, as modified from time to time, and as supplemented by the terms and conditions of this document.

1.4. "Charge Back" means a debit against Client's Reserve or Rebate or against any other funds due or to become due to Client for any reason from Steelhead Finance and/or a charge to be added to Client's Obligations to Steelhead Finance.

1.5. "Client" means the person or entity named as Client in a Factoring Agreement incorporating the terms and conditions of this document by reference.

1.6. "Client Address" means the address of Client set forth in the first paragraph of the Factoring Agreement incorporating the terms and conditions of this document by reference.

1.7. "Client Trade Names" means the trade names of Client set forth in the opening paragraph of a Factoring Agreement incorporating the terms and conditions of this document by reference and trade names or styles which become Client Trade Names by virtue of Section 4.1.1 hereof.

1.8. "Collateral" means the intangible and tangible property granted under Section B of the Factoring Agreement to Steelhead Finance by Client as security for any and all present and future Obligations.

1.9. "Credit Problem" means Customer may not pay or is unable to pay its debts because of financial problems/insolvency.

1.10. "Customer" means the person or entity to or for whom Client has provided services or services and/or who owes to Client the Account arising therefrom.

1.11. "Customer Dispute" means any claim or contention by a Customer against Client and/or Steelhead Finance, of any kind whatsoever, valid or invalid, that reduces or may reduce the amount collectible from Customer by Steelhead Finance.

1.12. "Holdback" means the difference between the face amount of an Account purchased by Steelhead Finance and the Advance paid by Steelhead Finance on the purchase price.

1.13. "Net Face Value" means, with respect to an Account, the gross face amount of such Account less all trade discounts or other deductions and claims to which the Customer is entitled and which have already been disclosed in writing by Client to Steelhead Finance.

1.14. "Obligations" means all loans, advances, debts, liabilities, obligations, covenants and duties owing by Client to Steelhead Finance, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, including, without limitation, invoices to Client from any company whose accounts are factored or financed by Steelhead Finance, amounts owed under any other agreements between Steelhead Finance and Client and indebtedness arising under any guaranty made by Client to Steelhead Finance or issued by Steelhead Finance on Client's behalf, together with interest, collection and late charges, and attorney's fees.

1.15. "Outstanding" means Steelhead has purchased the Account but the Account has not yet been paid or Repurchased.

1.16. "Rebate" means that portion of the Holdback that is either (a) credited to the Reserve, (b) credited to any sums owing by Client to Steelhead Finance for any reason whatsoever, or (c) refunded to Client once the Customer has paid the factored Account.

1.17. "Recourse" means that Accounts purchased are subject to Repurchase or Charge Back if the Customer does not pay the Account by the Recourse Date.

1.18. "Repurchase" means the Client will buy back any Account that has not been paid by the Recourse Date, is in a Customer Dispute, or is a Credit Problem, but until Steelhead Finance has been paid in cash for that Account, Steelhead Finance will still own the Account and, in any event until Client has repaid all amounts owing to Steelhead Finance, retain a security interest therein.

1.19. "Reserve" means funds, monies, and cash paid to Client which may be paid to Client after performance of certain conditions precedent as described herein.

1.20. "Steelhead Finance" means People's Bank of Commerce, an Oregon bank with an assumed business name of Steelhead Finance.

1.21. "Warrant" means to guarantee, and is a material element of this Agreement. Performance and non-breach of each separate warranty, each separate covenant, and each separate promise herein is an independent condition to Steelhead Finance's performance under this Agreement.

## 2. PURCHASE OF ACCOUNTS

2.1. Client shall present Accounts for purchase as outlined in Section A of the Factoring Agreement. Client shall submit to Steelhead Finance the original of each invoice and respective proof of delivery and (in transportation services matters) bill of lading signed by the Client, the shipper, and the consignee, all legible and, if required by Steelhead, attached to an assignment form provided by Steelhead Finance. Client will also deliver to Steelhead Finance with Accounts any form of assignment or document of sale which Steelhead Finance reasonably requests of Client to evidence the assignment of, or the purchase of the Accounts by, Steelhead Finance. Should Steelhead Finance or the Customer require any additional documentation as a prerequisite to payment, Client will also provide such documentation with each Account. All documentation shall be originals unless approved otherwise by Steelhead Finance. Any Account presented to Steelhead Finance for purchase shall be presented by Client within seven (7) days after Client's receipt of completed documents thereon.

2.2. Client will give notice to the Customers of the assignment of any Accounts by placing a legend or stamp on the invoices, in form satisfactory to Steelhead Finance, stating the invoices have been sold and assigned to Steelhead Finance and are payable to Steelhead Finance, at an address designated by Steelhead Finance. Where Steelhead Finance permits the Client to mail invoices directly to the Customer, Client shall mail invoices within 24 hours of presenting such Accounts to Steelhead Finance. Steelhead Finance may at any time and at its sole discretion notify any Customer of Client of the assignment to Steelhead Finance of Customer's obligation to Client and to make payments directly to Steelhead Finance.

2.3. Once Steelhead Finance has purchased or been assigned an Account, the right to any and all payments from Customer as to that Account are the sole property of Steelhead Finance. Any interference by Client with such payment being made directly and only to Steelhead Finance will constitute a default under this Agreement and may result in civil and/or criminal liability.

2.4. As to Accounts of all Customers Client presents to Steelhead Finance for the first time, Steelhead Finance requires, but is not obligated to conduct, credit checks on each such Customer prior to purchase of such Accounts. However, Steelhead Finance accepts no responsibility for the ultimate payment of those Accounts because of such requirement. Client has obtained or will obtain such consents and authorizations from each Customer as are required by applicable law to enable Steelhead Finance to conduct the credit checks contemplated by this paragraph.

2.5. Client will only sell to Steelhead Finance individual Accounts that do not exceed the Concentration Percentage of the gross face value of all unpaid Accounts from any one of Client's Customers as compared to the total gross face value of all unpaid Accounts by all Client's Customers Steelhead Finance has purchased from Client and not subject to Repurchase. The Concentration Limit shall be twenty (20) percent if CLIENT has $20,000 or more in Outstanding Accounts and the Concentration Limit shall be fifty (50) percent if CLIENT has less than $20,000 in Outstanding Accounts. In the event the Concentration Percentage is met or exceeded, Steelhead Finance may require Client to do one or more of the following:

Exhibit 1
Page 19 of 30

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

2.5.1. Increase Client's Reserve in Section 5.8 of this Agreement by the dollar amount that the gross face value of all of any such Client's Customer's outstanding Accounts purchased by Steelhead Finance exceeds the Concentration Percentage, however at a minimum, increase Client's Reserve by 2% for each 5% the Concentration Percentage is exceeded. Increases may be derived from Advances, Rebates, unfactored Accounts, however these are not the only options;

2.5.2. Repurchase the number of invoices of a total gross face value so that the percentage outstanding with Client's Customer is equal to or less than the Concentration Percentage;

2.5.3. Sell to Steelhead Finance, with Steelhead Finance's approval, Accounts from other Customers of Client so that none of the outstanding gross face values of Accounts of any of Client's Customers purchased by Steelhead Finance exceed the Concentration Percentage;

2.5.4. Leave the concentration in place to the extent then approved in writing by Steelhead Finance but with Client providing a current accounts receivable aging each week and Client paying an additional monthly concentration fee of 1.5% on all Accounts of Customers causing the concentration; and

2.5.5. Reimburse Steelhead Finance upon receipt of Steelhead Finance's invoice for the added out-of-pocket costs incurred by Steelhead Finance as a result of the concentration.

2.6. At the beginning of the factoring relationship between the parties hereto, Steelhead Finance may purchase Accounts of Client that have been either pre-billed by Client or previously financed by a lender. Any such Account purchased by Steelhead Finance shall also be subject to all provisions of this Agreement.

2.7. At such time or times and with such Customer or Customers as Steelhead Finance in its sole discretion shall determine, Steelhead Finance shall have the right to contact Customers to confirm the validity of Accounts presented to Steelhead Finance for purchase.

2.8. During each month, Client agrees to factor a minimum volume of invoices, as set forth in the Factoring Agreement (the "Minimum Factor Volume"). If, at the end of any month, Client does not meet the Minimum Factor Volume, Steelhead Finance may require a change to Client's advance rate, reserve requirement, fees, and/or charge an Unused Availability Fee.

## 3. PAYMENT ADVANCE AND FEES

3.1. Steelhead Finance agrees to purchase acceptable Accounts from Client for the Factor Fee. At the time Steelhead Finance purchases an Account, if there are additional fees or obligations due, Client will also pay such fees and obligations to Steelhead Finance.

3.2. Invoices that are submitted to Steelhead Finance for purchase but paid prior to their purchase by Steelhead Finance may be charged a Billed Only fee.

3.3. Steelhead Finance shall post all payments within 3 days after their receipt and pay to Client the Holdback on each invoice purchased less any fees, Charge Backs, Repurchases, adjustments, credit to Reserve to reach the level required by Section 5.8, and payment of any other sums owed to Steelhead Finance by Client (the Rebate). The date of such payment to Client shall be set forth in this Factoring Agreement (the "Rebate Settlement"). If Steelhead Finance elects to provide the Rebate via ACH, Client agrees to pay the ACH fee.

3.4. If the Client's dollar-weighted average turntime in any month exceeds 45 days, a charge of .10% shall apply to the Net Face Value of each invoice purchased in that month for each day the actual dollar-weighted average turntime exceeds 45 days. For purposes of these Terms and Conditions, the dollar-weighted average turntime means the sum of the products of (each invoice amount times its turntime) divided by the sum of such invoice amounts. e.g.: where $1,000 pays in 30 days and $2000 pays in 20 days, (30 x 1000) + (20 x 2000) / (1000 + 2000) = 23.33 days.

3.5. When the Minimum Factor Volume is unmet, the Unused Availability Fee may be applied. The Unused Availability Fee may be a dollar amount or percentage. If the dollar amount is used, the fee shall be the difference between $250.00 and the Factor Fee earned for the month that the Minimum Factor Volume is unmet. If the percentage is used, 0.5% is to be multiplied by the sum of the Client's factored invoices for the month that the Minimum Factor Volume is unmet.

3.6. A Default Fee of 3% of the gross face amount of all Client's Accounts outstanding applies at the time of the Event of Default and to the Client's Accounts outstanding per thirty (30) days thereafter, until such time as Steelhead Finance, as its sole discretion, declares the default to be cured.

3.7. Steelhead Finance may, at Steelhead Finance's option, charge Client's account for all amounts owing by Client to Steelhead Finance under this Agreement and for all other Obligations, including, without limitation, Steelhead Finance's standard fees and charges (see Exhibit A for a nonexclusive listing of such fees and charges), charges for additional special handling services as may be requested by Client from time to time, returned check fees and all other bank charges, collection expenses and attorney's fees.

3.8. The Factor Fee is tied to the Prime Rate, as listed in the Wall Street Journal (WSJ) on the first business day of every calendar month. The Factor Fee was established when the WSJ prime rate was three and one quarter of one percent (3.25%). If at any time during the term of this Agreement, the Prime Rate, as listed in the Wall Street Journal on the first business day of every calendar month, is greater than three and one quarter of one percent (3.25%), the Factor Fee shall be increased one twentieth of one percent (0.05%) for every one half percent (0.50%) increase in the Prime Rate above three and one quarter of one percent (3.25%). In the event the Prime Rate decreases after said increase, the Factor Fee shall decrease one twentieth of one percent (0.05%) for every one half percent (0.50%) decrease. At no time during the term of this Agreement shall the Factor Fee be less than as initially set upon entering into this Agreement. Steelhead Finance shall make this adjustment to Client's Factor Fee when the conditions in this section exist and without prior notice or consent of Client.

3.9. If Steelhead Finance retains the services of an attorney to enforce this Agreement or any other obligation of Client to Steelhead Finance, or to collect or attempt to collect any Account purchased by Steelhead Finance from Client or to enforce a lien on any other Collateral, Client agrees to pay attorneys' fees, accountants' fees, and other costs and expenses incurred by Steelhead Finance even though no suit, action, or proceeding is filed. If such a suit, action, or proceeding is filed, Client shall pay to Steelhead Finance the costs and expenses, accountants' fees, expert witness fees, and reasonable attorneys' fees incurred by Steelhead Finance in enforcing and protecting, in any way, Steelhead Finance's rights and the Collateral in the proceedings and in the trial and appellate courts. Client also agrees to pay all expenses and reasonable attorneys' fees incurred by Steelhead Finance in any bankruptcy proceedings (and whether in the trial or appellate courts) involving Client, any guarantor of Client's Obligations under this Agreement, or this Agreement itself, including, without limitation, those incurred in regard to proceedings to lift or modify the automatic stay, determine adequate protection, use cash collateral, or relating to any disclosure statement or plan of reorganization.

3.10. Client shall also indemnify and hold harmless Steelhead Finance of and from any and all claims, losses, damages, liabilities, attorneys' fees, and costs incurred or suffered by Steelhead Finance in any suit, action, or proceeding by or against any Customer and in any appeal and bankruptcy proceeding relating to a Customer. Steelhead Finance shall have sole and complete control of the defense of any such claims.

3.11. Client will also reimburse Steelhead Finance for any attorneys fees incurred in negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith, all of which shall be paid contemporaneously with the execution hereof.

3.12. Client will also reimburse Steelhead Finance on demand for the actual costs, including photocopying (which, if performed by Steelhead Finance's employees, shall be at the rate of $.10/page), travel costs, and attorneys' fees in the trial, appellate, and bankruptcy courts incurred in complying with any subpoena or other legal process attendant to any litigation in which Client is a party.

3.13. If any Account is placed for collection with an outside collecting agent, Client agrees to pay and reimburse Steelhead Finance for the fees of such agent.

3.14. Client shall also pay to Steelhead Finance all costs of filing UCC statements and instruments with appropriate governmental authorities together with the costs of all UCC, tax, and other lien searches.

3.15. Client agrees to reimburse Steelhead Finance for out-of-pocket expenses (including, but not limited to, overnight mail, credit and identification searches, etc.) incurred in order to perform due diligence in the qualification process and to review the aforementioned on an ongoing basis.

3.16. Client agrees to reimburse Steelhead Finance for out-of-pocket expenses (including, but not limited to, overnight mail, fax charges, investigation charges, etc.) and a reasonable hourly charge for

**Exhibit 1**
**Page 20 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

Steelhead Finance's in-house and outside auditors to review all books and records of Client at such time or times as Steelhead Finance may elect.

3.17. Client shall pay to Steelhead Finance a $10.00 Returned Check Processing Fee for any checks of the Accounts of Client that are returned either by the bank of Steelhead Finance.

3.18. All fees are subject to change at the discretion of Steelhead Finance, but only after giving Client thirty days (30 days) written notice. However, Steelhead Finance may change the amount of any fee caused by a change in Steelhead Finance's cost of funds without prior notice to Client, but must notify Client of such change in writing. A fee change due to a change in cost of funds may be effective upon the date of the change of the cost of funds, which date may be indicated in the notice.

## 4. REPRESENTATIONS, WARRANTIES, AND COVENANTS BY CLIENT

4.1. As an inducement for Steelhead Finance to enter into this Agreement, and with full knowledge that the truth and accuracy of the representations, Warranties, and covenants in this document and this Agreement are being and will be relied upon by Steelhead Finance, and instead of the delay and cost of a complete initial and then later credit investigation, Client represents, Warrants, and covenants to Steelhead Finance each of the following:

4.1.1. Client is duly qualified to do business, and in good standing in every state and province in which such qualification is required. The Client Trade Names are the only trade names or styles under which Client shall transact business. Client is properly licensed and authorized to operate their business and Client's trade name(s) has (have) been properly filed and published as required by the laws of the state in which they are registered.

4.1.2. The execution, delivery, and performance of this Agreement are within Client's corporate or other powers, have been duly authorized, and are not in contravention of law or the terms of its charter, by-laws, or other incorporation or other organizational papers. All consents or authorizations required to be obtained by the Client in connection with the transfer of each such Account to Steelhead Finance have been and will be duly obtained and will be in full force and effect. The execution, delivery, and performance of this Agreement are not and will not be in contravention of any law, rule, or regulation applicable to Client or of any indenture, agreement, or undertaking to which it is a party or by which it is bound. Client has, and shall continuously maintain in effect, all licenses, certificates, and insurance (including, if applicable, cargo insurance) necessary for the operation of its business and the issuance of invoices and Accounts. Client is and shall remain in compliance with all applicable laws, rules, and regulations, and is not a party to any litigation. There are not and will not be any unsatisfied judgments of record against Client in any court, and there are and will be no proceedings or investigations pending or, to the best of Client's knowledge, threatened against Client before any court, regulatory body, administrative agency, or other tribunal or governmental instrumentality seeking any determination or ruling that would materially and adversely affect the validity or enforceability of this Agreement.

4.1.3. Client is solvent.

4.1.4. To the best of Client's information and knowledge, at the time of presentation of any Account from a Customer for purchase by Steelhead Finance, that Customer's business is and will be solvent, and that Customer is not and will not be the subject of any bankruptcy proceedings or of any proceeding seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts, or seeking the entry of an order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property.

4.1.5. Client does not and will not own, control, or exercise dominion over, nor is it or will it be commonly owned or controlled by some person or entity which also owns or controls, in any way whatsoever, the Customer whose debt to Client is offered by Client to be purchased by Steelhead Finance.

4.1.6. All financial records, statements, books, and other documents shown to Steelhead Finance by or on behalf of Client at any

time, and whether before or after the signing of this Agreement, are and will be true and accurate.

4.1.7. While this Agreement is in effect, Client will not factor or sell any Accounts except to Steelhead Finance.

4.1.8. Client will not transfer, pledge, grant, or allow a security interest or other lien or encumbrance in or on any of the Collateral to anyone other than Steelhead Finance.

4.1.9. Client will maintain such insurance covering Client's business and assets as is customary for businesses similar to the business of Client and, at the request of Steelhead Finance, name Steelhead Finance as loss payee or additional insured of such insurance.

4.1.10. Client will, in a writing limited to that subject, notify Steelhead Finance in writing prior to a change in any of Client's name, state of incorporation or organization, address of chief executive office, identity, corporate structure, officers, address of a Client who is an individual, or the office or offices where Client's books and records concerning Accounts are kept.

4.1.11. With respect to each and all Accounts initially purchased by Steelhead Finance from Client and as to each Account purchased in the future by Steelhead Finance from Client: (1) each Account offered for sale to Steelhead Finance is and will be an accurate and undisputed statement of indebtedness by the Customer there described to Client for a sum certain which is due and payable in thirty (30) days or less; (2) each Account offered for sale to Steelhead Finance is and will be valid, genuine, true, and an accurate statement of a bona fide sale, lease, license, assignment, or other disposition of property, or bona fide performance of service, by Client to or for the Customer; (3) Client is, and will be at the time of purchase by Steelhead Finance, the lawful owner of and has and will have good, sole, and undisputed title to, and the right to sell, each of the Accounts purchased by Steelhead Finance; (4) each Account purchased and to be purchased at any time by Steelhead Finance from Client, and all other Collateral provided and to be provided by Client to Steelhead Finance under this Agreement, is and will be free of any and all liens, security interests, subordinations, and other encumbrances except with prior written notice thereof to Steelhead Finance and written approval thereof by Steelhead Finance; (5) Client will not, under any circumstances or in any manner whatsoever, and whether directly or indirectly, interfere with any of Steelhead Finance's rights under this Agreement including, but not limited to, Client or any one on Client's behalf soliciting or directing any payments from a Customer on any Account to anyone other than Steelhead Finance; (6) there is and will be no agreement between Client and the Customer as to the issuance or granting of any discount on, or other compromise, of the terms of the Account, and Client will not change or modify the terms of any Account with any Customer, nor grant any extensions, credits, discounts, releases, allowances, adjustments, deductions, return authorization, or the like with respect to any Accounts (or any guaranty, lien, or security interest therefor), or bring any lawsuit to enforce payment thereof, unless Steelhead Finance first consents in writing to any such change or modification; (7) the Account is not and will not be in dispute, and Client has and will have no knowledge of any fact, claim, or dispute which may impair the validity of the Account or make all or any part of it uncollectible in accordance with its terms and face amount; (8) there are and will be no counterclaims, offsets, or defenses (or over, short, or damage claims) existing in favor of the CUSTOMER, whether arising from the sale, lease, license, assignment, or other disposition of property of the goods or rendering of the services which is the subject of the Account or otherwise; (9) the Account was and will be made in accordance with all applicable laws, tariffs, and regulations of the appropriate agencies and was and will be made according to lawful and valid contracts which Client has executed; (10) the Account is and will be supported by lawful, effective, and complete documents, including, when involving transportation services, complete bills of lading or other contracts of carriage together with bona fide, genuine, valid, and signed delivery receipts; (11) all services, sales, delivery of goods, and leases which give rise to the Account have been actually performed; (12)

**Exhibit 1**
**Page 21 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

the Account is not and will not be a duplicate of, nor does it nor will it cover the same services or charges of an Account previously purchased by Steelhead Finance from Client or billed directly by Client to the CUSTOMER; (13) Client will defend the Accounts, and all other Collateral granted hereby, against any and all claims and demands of all persons and entities other than Steelhead Finance; (14) Client will immediately notify Steelhead Finance of the discovery that any Warranty, representation, or covenant contained herein is untrue or has been breached, in any material respect, or of any material change from the present in Client's own financial status, or in the collectability of any Accounts purchased by Steelhead Finance from Client, including, without limitation, any claims, rejections, reductions, returns, disputes, resale and adjustments claimed by any Customer and of any credits allowed by Client; (15) the payment of the Account is not and will not be contingent upon the fulfillment of any future obligation, service, or contract; (16) Client has and will set forth on the Accounts sold to Steelhead Finance the correct invoice date and due date of each Account, and Client will have promptly made and maintain proper entries on Client's books and records relating thereto; (17) the Accounts are not being transferred to satisfy any antecedent debt; (18) the Account has not been rescinded or satisfied; and (19) if Client is a transportation broker, there are no other transportation brokers involved in the transaction of the Account.

4.1.12. Client has complied, and will comply, with all federal, state, and local tax requirements and will furnish Steelhead Finance, upon request, with satisfactory proof of payment and/or compliance therewith.

4.1.13. Client has paid and will pay when or before due all taxes, if any, owing, assessed, or levied against any of the Collateral in which Steelhead Finance has or receives a security interest from Client.

4.1.14. Client will, within seven (7) days, notify Steelhead Finance in writing of any attachment or any other legal process served upon or levied against Client, any of Client's property, any Accounts generated by Client, or any of Client's Customers.

4.1.15. No event has or will have occurred which materially and adversely affects the Client's operations, including its ability to perform the transactions contemplated by this Agreement other than the bankruptcy or financial difficulty of a Customer that occurs after the purchase by Steelhead Finance of a related Account.

4.1.16. All of Client's books, accounts, correspondence, papers, and records pertaining to Client's Accounts, general intangibles, contract rights, other assets, the Collateral, and business, including, without limitation, services performed or to be performed and property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, are and shall be prepared and maintained in an accurate and timely fashion, and are and shall remain located at the Client Address shown on the first page of these Terms and Conditions. All such books, accounts, correspondence, papers, and records will be opened by Client for Steelhead Finance's inspection and copying, at all reasonable times, and from time to time. Upon Steelhead Finance's demand, Client shall turn over to Steelhead Finance any and all such books, accounts, correspondence, papers, and records. Client shall at all reasonable times and from time to time, upon request by Steelhead Finance, fully discuss Client's financial affairs with Steelhead Finance and provide to Steelhead Finance any information reasonably requested by Steelhead Finance.

4.1.17. Client shall use all funds received by Client from Steelhead Finance for operations of Client, but neither make any loans or advances thereof to any persons or entities affiliated in any way with Client nor use any such funds for the purpose of purchasing capital stock or other equity interests in any company, business, or organization.

4.1.18. Client will not allow any guarantors of any Obligations to terminate or cancel any such guaranties, and Client will cause any such guarantors to provide Steelhead Finance, upon Steelhead Finance's request, with true and correct financial statements of the guarantor or guarantors, as the case may be, and in such form as Steelhead Finance may reasonably prescribe.

4.1.19. Client has not changed its name during the past seventy-two (72) months.

4.1.20. Each Account is and will be denominated and payable in the lawful currency of the United States of America. Client agrees that every customer under an Account which has been sold by Client to Steelhead Finance will make payment to Steelhead Finance in respect of all obligations owing under such Account in the currency (the "Original Currency") in which such Customer is required to pay such obligations. If such Customer makes payment relative to any obligation to Steelhead Finance in a currency (the "Other Currency") other than the Original Currency (whether voluntarily or pursuant to an order or judgment of a court or tribunal of any jurisdiction), Client agrees that such payment will constitute a discharge of the liability of such Customer in respect of such obligation only to the extent of the amount of the Original Currency which Steelhead Finance is able to purchase at Medford, Oregon, with the amount of the Other Currency it receives on the date of receipt. If the amount of the Original Currency which Steelhead Finance is able to purchase is less than the amount of such currency originally due to it in respect of the relevant obligation, Client will indemnify and save Steelhead Finance harmless from and against any loss or damage arising as a result of such deficiency. This indemnity will constitute an obligation separate and independent from the Obligations contained in this Agreement, will give rise to a separate and independent cause of action, will apply irrespective of any indulgence granted by Steelhead Finance, and will continue in full force and effect notwithstanding any judgment or order in respect of any amount due hereunder or under any judgment or order.

4.1.21. Client will immediately notify Steelhead Finance if any one or more of the following occur: (1) any tax lien is filed or asserted against Client or any of Client's assets; (2) Client fails to pay in full any tax when or before due; (3) Client receives any notice of tax assessment or deficiency, delinquency, or levy; (4) any change in officers, stockholders, partners, or members of Client; or (5) any event occurs which in itself, or with the passage of time or the giving of notice, would constitute an Event of Default under this Agreement.

4.1.22. Client will not grant permission or allow any other party to debit any bank account held or controlled by Client.

4.1.23. All of Client's representations, Warranties, and covenants contained in this document and this Agreement are now true and will continue to be true while this document and this Agreement and any changes, modifications, amendments hereto, and extensions and renewals hereof, are in effect, and will survive termination and cancellation of this Agreement.

4.2.    Client hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Steelhead Finance at Client's expense all financial information, books and records, work papers, management reports and other information in their possession relating to Client.

4.3.    Client authorizes Steelhead Finance to act upon telephonic, facsimile, written, electronic mail, verbal, or other instructions received from anyone purporting to be an officer, employee, or representative of Client.

4.4.    Client and Steelhead Finance agree that no amount originally owing in respect of an Account shall, for the purposes of this document and this Agreement, be considered to have been paid by the related Customer unless such amount has been paid to Steelhead Finance. For greater certainty, and without limiting the generality of the previous sentence, Client and Steelhead Finance agree that if a Customer shall withhold any amount payable in respect of an Account for the purpose of remitting the amount withheld to tax authorities in accordance with applicable law, then notwithstanding that, as between the Customer and the Client, the amount so withheld shall be deemed by applicable law to have been paid to and/or received by Client or Steelhead Finance, (i) such amount, as between Steelhead Finance and Client, shall be deemed not to have been paid by the Customer or received by Steelhead Finance and (ii) Client shall indemnify and hold harmless Steelhead Finance in respect of any loss that Steelhead Finance may suffer or incur as a result of Steelhead Finance not having received payment of the amount withheld or as a result of the Customer ceasing to have any legal obligation to pay to Steelhead Finance or Client the amount so withheld.

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

4.5.   In the event that any lien, security interest, or other claim or encumbrance against Client or any assets of Client shall arise in favor of any taxing authority or otherwise, whether or not notice of such lien, security interest, claim, or encumbrance shall be filed or recorded as may be required by law, Steelhead Finance shall have the right, in its sole discretion, but shall not be obligated nor shall Steelhead Finance assume the duty, to pay any such tax or other debt by virtue of which such lien, security interest, claim, or encumbrance will have arisen.  Client shall owe and promptly pay to Steelhead Finance upon demand any sum or sums which Steelhead Finance may pay for the discharge of any such lien, security interest, claim, or encumbrance against Client's assets or any other claim including, without limitation, of a carrier for a broker, plus interest thereon at the rate of eighteen percent (18%) per annum until paid. Client will indemnify and hold Steelhead Finance harmless against any and all liability, losses, and expense (including attorney's fees with or without action and in the trial, appellate, and bankruptcy courts), caused by or arising out of any alleged claims, defenses, offsets, or counterclaims asserted by any person or entity and relating in any manner to any Account purchased by Steelhead Finance hereunder or any other Collateral granted to Steelhead Finance hereunder.  In the event any sales or excise taxes are imposed by any state, federal, or local authorities with respect to any of the Accounts sold hereunder or Collateral granted hereunder, where such taxes are required to be withheld or paid by Steelhead Finance, Client shall also indemnify and hold Steelhead Finance harmless with respect to all such taxes.  Client hereby authorizes Steelhead Finance to charge to the Reserve or any other amount otherwise owing to Client for any amount owing under this section 4.5.

**5.   DISPUTES, CHARGE BACKS AND RESERVES**

5.1.   Client must immediately notify Steelhead Finance of any Credit Problem or Customer Dispute between any Customer and Client.

5.2.   Client will immediately pay to Steelhead Finance the full amount of any Account subject to a Credit Problem or Customer Dispute of any kind whatsoever.  If Client does not immediately so Repurchase such Accounts, Steelhead Finance may, among other remedies, charge Client's Reserve or any subsequent Advances, Rebates, refunds, or any other funds otherwise due at any time to Client from Steelhead Finance.

5.3.   Steelhead Finance may compromise and settle Accounts for less than face value, in Steelhead Finance's sole and absolute discretion, without notice to Client and without prejudice to Steelhead Finance's right to payment from and Charge Back to Client for the difference between the face amount and the amount collected, after deducting reasonable expenses of realization from the collection.  Such compromise or settlement does not relieve Client of final responsibility for payment of such Account in full.

5.4.   Mistaken, incorrect, and/or erroneous invoicing submitted by Client to Steelhead Finance may, at Steelhead Finance's discretion, be deemed a Customer Dispute or Credit Problem and be charged back to Client.

5.5.   Steelhead Finance may identify in writing all Charge Backs and provide to Client a written statement which includes that information.

5.6.   Client guarantees that all Accounts purchased by Steelhead Finance shall be paid in full within the Recourse Date.  Any Account not paid within the Recourse Date must be paid by Client to Steelhead Finance on or before the first (1st) day thereafter.  In the event that any Account purchased by Steelhead Finance is not paid within the Recourse Date and is not Repurchased by Client or Charged Back in full against an Advance for other Accounts purchased from Client, Client will continue to owe Steelhead Finance the fees described in Section 3 on the balance of that Account until such time as that Account is satisfied in full.

5.7.   Steelhead Finance shall still have a continuing security interest in any Account which is Charged Back to Client. Should any such Accounts be collected by Steelhead Finance, Steelhead Finance may apply the collected amount towards any indebtedness owed to Steelhead Finance by Client for any reason whatsoever, including but not limited to the Reserve, Charge Backs, fees, costs, etc.

5.8.   Steelhead Finance shall be entitled in its discretion to withhold from Advances, Rebates, or other funds otherwise due to Client, an amount in reserve as put forth in this Factoring Agreement, equal to a percent (the "Reserve Percentage") of one of the following:

5.8.1.   The gross face amount of all Client's Accounts then currently outstanding;

5.8.2.   The high balance of Accounts within the prior three (3) month period;

5.8.3.   The average of the most recent prior three (3) months' of factored volume; or

5.8.4.   A monthly volume anticipated by Steelhead Finance to be factored based upon (i) Client information or (ii) the number of trucks hauling under Client at any given time, times $20,000 per truck.

5.9.   The Reserve shall be owned, controlled, and in the exclusive possession of Steelhead Finance. Said Reserve may be applied by Steelhead Finance against Charge Backs and any other obligation of Client to Steelhead Finance.  The balance, if any, in said Reserve shall not be due or payable to Client until any and all Obligations are fully paid and satisfied and the conditions precedent set forth in Section 5.11 have been performed or have occurred.

5.10.   If, in the sole discretion of Steelhead Finance, the Reserve percentage becomes inadequate to protect Steelhead Finance's reasonable concerns, or if Steelhead Finance otherwise deems itself insecure, Steelhead Finance shall have the right to immediately or later increase the Reserve percentage of the gross face amount of invoices purchased up to 100% of the gross face amount of the then outstanding Accounts.

5.11.   Upon termination or cancellation of this Agreement and after the expiration of thirty (30) days from the date that all purchased Accounts are paid in full and all amounts owing to Steelhead Finance under this Agreement have been paid in full and all terms, conditions, and covenants of this Agreement have been performed by Client, Steelhead Finance shall undertake, reasonably promptly, a determination of the amount and timing of payment of the Reserve to Client.  Prior to or after termination or cancellation, an analysis of Client's Accounts may be prepared by Steelhead Finance, and after withholding such portion of the Reserve as Steelhead Finance deems adequate (which amount may be greater than the amount stated in Section 5.8), a partial payment may be made to Client if one is due.  Steelhead Finance's analysis may include, but is not limited to, such factors as:

5.11.1.   Collection history of Accounts submitted by Client;

5.11.2.   Payment of Charge Backs and Charge Back history for adjustments by Steelhead Finance;

5.11.3.   Whether any payments to Steelhead Finance may be at risk of having to be paid back to a bankruptcy trustee or anyone else.

5.11.4.   Payment of all other sums owed by Client to Steelhead Finance.

5.12.   Steelhead Finance may also retain the Reserve unless and until Client has executed and delivered to Steelhead Finance a general release in a form reasonably satisfactory to Steelhead Finance. Client understands that this provision constitutes a waiver of its rights under § 9-513 of the UCC.

5.13.   In the event that the Charge Backs to Client and other sums owing to Steelhead Finance by Client for any reason whatsoever exceed the amount of the Reserve, none of the Reserve will be paid, and Client will pay Steelhead Finance an amount equal to such excess plus interest on such excess at four percent (4%) above the prime rate as announced by Steelhead Finance's lender from the date notice of the excess liability is rendered to Client until payment is received by Steelhead Finance.

5.14.   In order to satisfy any of the Obligations, Steelhead Finance is hereby authorized by Client to initiate electronic debit entries through the ACH or other electronic payment system to any account maintained by Client.  At Steelhead Finance's request, Client shall execute and deliver to Steelhead Finance an authorization agreement for ACH debits.

**6.   ADMINISTRATION**

6.1.   The parties intend the purchase of Accounts to be a sale and purchase transaction based on a transfer of title and not a loan of monies or an agreement to lend.

6.2.   Client irrevocably authorizes Steelhead Finance to authenticate and file all records (including initial financing statements, certificates of title, control instructions to third parties, amendments, continuation statements, etc.) that are or may be reasonably required by Steelhead Finance to perfect and continue its security interest in the Collateral, and Client ratifies any prior such filings by Steelhead Finance in connection with or related to this Agreement.  Client authorizes Steelhead Finance to indicate that the financing

**Exhibit 1**
**Page 23 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

statement covers all Collateral described in this Agreement, relates to certain real property (if any), contains a notification that Client has granted a negative pledge to Steelhead Finance, and that any subsequent lienor may be tortiously interfering with Steelhead Finance's rights. Client shall execute (sign, acknowledge when necessary, and deliver) any other records or documents necessary or possibly helpful to perfect and continue the security interest under applicable federal or state statute, regulation, or treaty, including any financing statement necessary to perfect a security interest in fixtures.

6.3. Clients who are transportation brokers shall also furnish to Steelhead Finance monthly aging reports of accounts receivable and accounts payable by the 10th day of each following month.

6.4. Client shall deliver to Steelhead Finance possession of all Collateral which is negotiable documents, goods, instruments, money, security certificates, and tangible chattel paper, and shall provide to Steelhead Finance any endorsements and third-party acknowledgments reasonably requested by Steelhead Finance with respect to such items of the Collateral.

6.5. Client agrees to authenticate and to cause all necessary third parties to authenticate any and all records necessary for Steelhead Finance's control over investment property, deposit accounts, electronic chattel paper, and letter-of-credit rights. Client agrees that the third party will have the right to comply with the Instructions originated by Steelhead Finance directing disposition of such Collateral without further consent by Client, and Client will indemnify and defend the third party from all claims by Client arising from or related to the third party's compliance with Steelhead Finance's disposition instructions. Client will cause any bank with which a deposit account is maintained to subordinate its rights of recoupment and setoff to Steelhead Finance's security interest.

6.6. Without expense to Steelhead Finance, Steelhead Finance may use any of Client's personnel, equipment (including without limitation computer equipment, programs, printed output, and computer readable media), supplies, and premises for the inspection and collection of Accounts and realization on other Collateral as Steelhead Finance, in its sole discretion, deems appropriate.

6.7. Whenever any payment on an Account purchased by or assigned to Steelhead Finance comes into Client's possession, Client will receive the payment in trust and safekeeping as the property of Steelhead Finance and immediately turn over to Steelhead Finance the payment in the form of the identical check or other form of payment received by Client. Should Client come into possession of a check comprising payments owing to both Client and Steelhead Finance, such check likewise shall be received in trust for Steelhead Finance, and Client shall turnover said check to Steelhead Finance, and Steelhead Finance will refund Client's portion to Client. In addition, if Client breaches any provision of this paragraph and fails to perform hereunder within three (3) days of Steelhead Finance's demand therefor, Client will also owe to Steelhead Finance a misapplied fee equal to twenty-five percent (25%) of the face amount of the Account.

6.8. Client acknowledges that Client has been notified by Steelhead Finance of the potential civil and/or criminal liability for failure to fully comply herewith, and that even the cashing, depositing, and/or negotiation of any payment which is partly or all the property of Steelhead Finance could result in civil and/or criminal liability and penalties attendant thereto. Even if some employee of Client negotiates such a check or payment without Client's direct knowledge, Client realizes it can still be held liable for the acts of Client's employees or agents.

6.9. Client further acknowledges that Client has been notified by Steelhead Finance that an indebtedness by Client to Steelhead Finance arising under circumstances as described in this Agreement can constitute a debt which cannot be discharged in a Bankruptcy Court, that the conversion of checks or payments can be deemed an intentional act even if Client did not specifically intend to take or convert said payments and/or damage Steelhead Finance, and that an individual causing or allowing the conversion can be held personally liable therefor.

6.10. The relationship of the parties hereto shall be that of Seller and Purchaser of Accounts, and Steelhead Finance shall not be a fiduciary of the Client, although Client may be a fiduciary to Steelhead Finance.

6.11. Client will promptly furnish Steelhead Finance with all statements prepared by or for Client showing Client's financial condition and the

results of Client's operations (all individually and collectively "Financial Statements") and such other statements as Steelhead Finance may reasonably request.

6.12. Client represents, warrants, and covenants to Steelhead Finance as follows: The Financial Statements, income tax returns, and payroll tax returns of Client and its subsidiaries (if any) heretofore and hereinafter furnished to Steelhead Finance by or on behalf of Client are and will be complete and correct and fairly represent the financial condition of Client and its subsidiaries as of the dates of said Financial Statements and the results of their operations for the periods ending on said dates. All financial data and information provided or communicated by Client to Steelhead Finance is and will be accurate and complete. All Financial Statements delivered hereunder shall be prepared on the basis of generally accepted accounting principles applied on a consistent basis. Neither Client nor any of its subsidiaries has or will have any material contingent obligations, liabilities for taxes, long-term leases, or unusual forward or long-term commitments not disclosed by or reserved against in said Financial Statements or the notes thereto, and as of the time of each such accounting period there are not and will not be any material unrealized or anticipated losses from any unfavorable commitments of Client or any of its subsidiaries. Since the date of the latest of such statements, there has been and will be no material adverse change in the financial condition of Client or any of its subsidiaries from that set forth in said Financial Statements as of that date except as disclosed in writing on or with those Financial Statements.

6.13. In order to carry out this Agreement and avoid unnecessary notification of Customers, Client irrevocably appoints Steelhead Finance and any person designated by Steelhead Finance as Client's special attorney in fact, and agent, coupled with an interest, with full power to:

6.13.1. Strike out Client's address on all invoices mailed to Customers and insert Steelhead Finance's address;

6.13.2. Receive, open, and dispose of all mail addressed to Client, or to any of Client's trade names;

6.13.3. Endorse the name of Client or Client's trade name on any checks or other evidence of payment or other documents that may come into the possession of Steelhead Finance on or relating to Accounts purchased by Steelhead Finance or to any other Collateral;

6.13.4. In Client's name, or otherwise, invoice, demand, sue for, collect, receive, deposit to Steelhead Finance's bank accounts, and give (without affecting Client's Obligations therefor) releases and receipts binding on Client for and of any and all monies due or to become due on Accounts;

6.13.5. Compromise, prosecute, grant extensions, and defend any action, claim, or proceeding as to said Accounts and any other Collateral;

6.13.6. Do any and all things necessary and proper to insure payment of all amounts due to Steelhead Finance and to carry out the purpose intended by this Agreement;

6.13.7. Upon the happening of a default, notify the U.S. Postal Service to change the address for delivery of mail addressed to Client to such address as Steelhead Finance may designate;

6.13.8. Sell in whole or in part for cash, credit, or property to others at any public or private sale (or to itself at any public sale), assign, make any agreement with respect to, or otherwise deal with any of the Collateral;

6.13.9. Notify Customers of the sale of Accounts to Steelhead Finance and notify, direct, and instruct Customers, in Client's name or trade name, of the remit-to address and procedures for making payment on any Accounts to Steelhead Finance;

6.13.10. Act as the point of contact with any of the Client's insurance companies, with full access to all information, and the power to negotiate, notify, settle and direct payments on any claims or refunds.

6.13.11. File in the name of Client or Steelhead Finance or both, (1) mechanics liens or related notices and (2) claims under any payment bond, in connection with goods or services sold by Client in connection with the improvement of realty.

6.13.12. Exercise of the foregoing powers shall be in the sole and absolute discretion of Steelhead Finance without any obligation to do so. Nothing contained in this Agreement shall require Steelhead Finance to initiate or become a party to any litigation. Steelhead Finance may require adequate security

**Exhibit 1**
**Page 24 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

from Client for Steelhead Finance's attorneys' fees and costs before becoming a party to any litigation with respect to Accounts purchased by, or Collateral granted to, Steelhead Finance.

6.13.13.  The authority granted Steelhead Finance by this Section 6.13 shall remain in full force and effect until all Accounts are paid in full and any and all indebtedness of Client to Steelhead Finance is paid in full and discharged.

6.14.  Should Steelhead Finance receive an unscheduled payment on an Account or a payment on an Account that has been recoursed or not factored, or other payment which is not identified, Steelhead Finance shall carry these sums as open items and may forward them to the Client, return them to the payor thereof upon proper identification, or Steelhead Finance may, at its option, credit any such payments to the Reserve or against any outstanding indebtedness of Client to Steelhead Finance.

6.15.  Steelhead Finance may identify in writing and provide to Client written statements setting forth the transactions arising hereunder. Each statement shall be considered correct and binding upon Client as an account stated, except to the extent that Steelhead Finance receives, within twenty-one (21) days from the date such statement is mailed or otherwise made available (electronically or otherwise) to Client, written notice from Client of any specific exceptions by Client to that statement, and then it shall be binding against Client as to any items to which it has not objected.

6.16.  Client shall also, at all times, do, make, execute, and deliver any and all additional and further instruments and documents, and take such further action, as may be requested by Steelhead Finance, in order to more completely vest in and assure to Steelhead Finance, and make available to it, the property and rights hereby or at any time hereafter granted or sold to Steelhead Finance and to evidence the sale of the Accounts to Steelhead Finance and to carry into effect the provisions and intent of this Agreement.

6.17.  In the event Client's principal(s), officer(s) or director(s), directly or in conjunction with any other person, causes to be formed a new transportation entity or otherwise becomes or is associated with any new or existing transportation entity (whether corporation, partnership, limited liability company or otherwise) such entity shall be deemed to have expressly assumed the obligations due Steelhead Finance by Client under this Agreement. With respect to such entity, Steelhead Finance shall be deemed to have been granted an irrevocable power of attorney with authority to file, naming such newly formed or existing entity, a new UCC-1 financing statement naming such entity as Debtor, and to have it filed with any and all appropriate secretaries of state or other UCC filing offices. Steelhead Finance shall be held harmless by Client and its principals, officers or directors and be relieved of any liability as a result of Steelhead Finance's execution and recording of any such financing statement or the resulting perfection of its ownership or security interests in such entity's assets. In addition, Steelhead Finance shall have the right to notify such entity's Account Debtors of Steelhead Finance's rights, including without limitation, Steelhead Finance's right to collect all Accounts, and to notify any creditor of such entity that Steelhead Finance has rights in such entity's assets.

6.18.  All rights, remedies, and powers granted to Steelhead Finance in this Agreement, and in any other agreement given by Client to Steelhead Finance, are cumulative and may be exercised singularly or concurrently with such other rights as Steelhead Finance may have. These rights may also be exercised from time to time as to all or any part of the Accounts and other Collateral as Steelhead Finance, in its discretion, may determine.

7.  **LIMITED LIABILITY; INDEMNITY**

7.1.  Client shall indemnify and hold Steelhead Finance harmless from all liability, claims, demands, or civil actions by any and all of Client's Customers arising from or related to Steelhead Finance's actions in performance hereof, and Client hereby releases and discharges Steelhead Finance from any claim, demand, civil action, or damages which Client may hereafter suffer as a result of Steelhead Finance's actions with Client's customers in performance hereof.

7.2.  Client hereby releases and exculpates Steelhead Finance and Steelhead Finance's officers, employees, and agents, from any liability arising from any acts under this Agreement or in furtherance thereof whether of omission or commission, and whether based upon any error of judgment or mistake of law or fact, except for willful misconduct. In no event will Steelhead Finance have any liability to

Client for lost profits or other special or consequential damages. Client authorizes Steelhead Finance to accept, indorse and deposit on behalf of Client any checks tendered by a Customer "in full payment" of its obligation to Client. Client shall not assert against Steelhead Finance any claim arising therefrom, irrespective of whether such action by Steelhead Finance effects an accord and satisfaction of Client's claims under §3-311 of the Uniform Commercial Code or otherwise.

8.  **DEFAULT**

8.1.  Time is of the essence hereof. Complete performance of all terms, conditions, and covenants is required hereunder. Any one or more of the following shall be an Event of Default hereunder:

8.1.1.  Client fails to pay any indebtedness to Steelhead Finance when or before due;

8.1.2.  Client breaches any term, provision, covenant, Warranty, or representation under this Agreement or under any other agreement and/or contract between Client and Steelhead Finance or any other obligation of Client to Steelhead Finance or any such representation or Warranty or document provided by Client to Steelhead Finance turns out to have been false in any material manner when made or furnished;

8.1.3.  The appointment of any receiver, conservator, or trustee of all or any portion of the assets of Client;

8.1.4.  Any levy, attachment, execution, tax assessment, tax lien, or similar process shall be issued against any Account or any other Collateral or any other property of the Client and shall not be released within ten days (10 days) thereafter;

8.1.5.  Any Financial Statement, schedule, tax return, or other document furnished by or for Client to Steelhead Finance is false or incorrect in any material respect;

8.1.6.  Client, or any guarantor of any of Client's Obligations, dies, dissolves, ceases to conduct business for five (5) business days, makes a general assignment for the benefit of creditors, or declares that it is unable to pay its debts as they mature;

8.1.7.  Client, or any guarantor of any of Client's Obligations, files a proceeding under any law for the relief of debtors, including, but not limited to, the Bankruptcy Code or any other similar state or federal law which may now or hereafter exist;

8.1.8.  Any involuntary petition under the Bankruptcy Code or similar statute is filed against Client or any guarantor of any of Client's Obligations;

8.1.9.  Any guarantor of any of Client's Obligations fails to perform or observe any of such guarantor's obligations to Steelhead Finance or shall notify Steelhead Finance of its intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever;

8.1.10. Any change in the financial or other condition of Client or of any guarantor of any of Client's Obligations which reasonably causes Steelhead Finance to deem itself insecure;

8.1.11. Any practical or majority change of control of Client occurs;

8.1.12. Client has made or makes any material misstatement of fact to Steelhead Finance with respect to any Account, Customer, or Client, or otherwise relating in any way to this Agreement;

8.1.13. If Client operates as a transportation broker and Client fails to pay a carrier or sub-hauler when due.

8.1.14. Steelhead for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations.

8.2.  If any Event of Default hereunder occurs, Steelhead Finance may do any one or more of the following and with or without judicial process:

8.2.1.  Declare any indebtedness owed by Client to Steelhead Finance immediately due and payable.

8.2.2.  Require Client to assemble the Collateral and the records pertaining to Accounts and other Collateral and make them available to Steelhead Finance at a place designated by Steelhead Finance.

8.2.3.  Enter the premises of Client and take possession of the Collateral and of the records pertaining to the Accounts and any other Collateral.

8.2.4.  Besides other similar rights granted to Steelhead Finance in this Agreement, grant extensions, compromise claims, and settle Accounts for less than face value, all without prior notice to Client.

**Exhibit 1**
**Page 25 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

8.2.5.  Dispose of any collateral in which Steelhead Finance has a security interest in at public or private sale and Client will be liable for any deficiency.

8.2.6.  Steelhead Finance shall not be required to proceed against any collateral but may proceed against Client directly.

8.2.7.  Pursue all other remedies then available under applicable law including without limitation Oregon's version of the Uniform Commercial Code.

8.2.8.  Charge Default Fee.

8.2.9.  In addition to all other remedies upon a default, Steelhead Finance shall have the right to require Client to immediately deliver sufficient monies to Steelhead Finance to increase the amount of the Reserve established pursuant to Section 5.8 of this Agreement to 100% of the then outstanding Accounts purchased by Steelhead Finance from Client, plus any and all other sums owing by Client to Steelhead Finance for any reason whatsoever.  After default by Client, Steelhead Finance shall also have the right to immediately and without notice apply all or any part of the Reserve to the damages suffered by Steelhead Finance as a result of the default, including without limitation, loss of factoring fees and other charges and fees, lost profits, lost interest, collection costs, and reasonable attorney fees incurred with or without action and in the trial, appellate, and bankruptcy courts.

8.3.  If Client shall substantially cease operating as a going concern, and the proceeds of Collateral collected after the occurrence of an Event of Default (the "Default") are in excess of all amounts owed by Client to Steelhead Finance at the time of Default, Client shall pay to Steelhead Finance a liquidation success premium of ten (10%) percent of the amount of such excess.

8.4.  Client understands and acknowledges that in the event a bankruptcy petition is filed by or against Client, Client cannot sell to Steelhead Finance any Accounts without first obtaining Bankruptcy Court approval.  Client agrees to immediately notify Steelhead Finance if Client files or has filed against it any petition for relief under bankruptcy laws.  Client agrees it will not sell any Accounts or accept any Advance from Steelhead Finance after Client becomes subject to any bankruptcy law without first having obtained Bankruptcy Court approval on terms satisfactory to Steelhead Finance.

## 9.  TERM AND TERMINATION

9.1.  This Agreement becomes effective when it is signed by Client and either (a) accepted by an authorized officer of Steelhead Finance or (b) when Steelhead Finance's first Advance hereunder occurs.

9.2.  Steelhead Finance may terminate or cancel this Agreement (i) immediately with cause (including, without limitation, the occurrence of an Event of Default hereunder) and (ii) on ten (10) days notice to Client without cause. Client may terminate this Agreement without cause by giving written notice ("Termination Notice") to Steelhead Finance not less than ninety (90) days prior to the intended date of termination or cancellation (the "Termination Timeframe"). However, if the Termination Timeframe is seventy five (75) days, the Termination Notice shall only be accepted between seventy five (75) and one hundred five (105) days prior to (i) one year from the date hereof or (ii) the annual anniversary of the date hereof. However, in the event that:

9.2.1.  Client ceases offering Accounts to Steelhead Finance for purchase either (a) before the intended date of termination as stated in Client's notice thereof, (b) without a notice of termination from Client as required herein; or (c) without any notice of termination at all from Client;

9.2.2.  an Event of Default by Client results in Steelhead Finance's terminating or canceling this Agreement at any time whatsoever; or

9.2.3.  the total face amount of Accounts sold by the Client to Steelhead Finance during any calendar month is less than seventy five percent (75%) of the average or median (whichever is higher) of the monthly face amount sold to Steelhead Finance in the first three (3) months this Agreement is in effect or in the three (3) month period immediately preceding such calculation, whichever is later,

then, at Steelhead Finance's option, Client shall also owe to Steelhead Finance a premature termination fee of the greater of either (a) the Reserve required by Section 5.8 hereof, (b) an amount equal to two (2) times the sum of the highest of all fees earned by Steelhead Finance from Client during any one month of the

contractual relationship hereunder, or (c) the greater of the highest of all fees earned by Steelhead Finance from Client during any one month of the contractual relationship hereunder multiplied by the number of months remaining in the contract period, not as a penalty but as an additional fee to compensate Steelhead Finance for loss of profits and other damages resulting from such premature termination or cancellation.

When Client provides notice of intent to terminate this Agreement, Rebates available after Obligations shall be credited to Reserve. If Client requests a waiver to this policy, or accepts a change to the Agreement during the Termination Timeframe, or submits invoices for purchase after the Termination Timeframe, such termination notice will be deemed to be withdrawn.

9.3.  After termination or cancellation, Client shall remain fully responsible to Steelhead Finance for any and all Obligations and indebtedness then existing or which may thereafter arise in connection with this Agreement including without limitation factored Accounts that remain outstanding and unpaid.  Steelhead Finance also will continue to have a security interest in the Collateral described in this Agreement until all Accounts purchased have been paid in full and all fees, termination fees and charges, collection expense, attorney's fees, and all other Obligations have been paid in full and any possible statutory preference period has expired without any action or other proceeding being instituted against Steelhead Finance for repayment of any such sums to anyone.

9.4.  In recognition of Steelhead Finance's right to have all its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, Steelhead Finance shall not be required to record any terminations or satisfactions of any of its security interests or other liens on the Collateral unless and until receiving irrevocable payment in full of all Obligations and Client has executed and delivered to Steelhead Finance a general release in a form reasonably satisfactory to Steelhead Finance.  Client understands that this provision constitutes a waiver of its rights under § 9-513 of the UCC.

## 10.  MODIFICATION, AMENDMENT, AND RESTATEMENT

10.1.  The Factoring Agreement between Steelhead Finance and Client, supplemented by these terms and conditions and any exhibits referenced in connection therewith (collectively, "Factoring Agreement"), constitutes a fully and completely integrated Agreement between the parties as authorized by O.R.S. § 41.740 and is intended to be the final and exclusive expression of their agreement, and evidence of any prior oral or written agreements shall not be permitted to add to, subtract from, alter, or contradict the terms of the Factoring Agreement.

10.2.  The headings of the paragraphs herein are for convenience only and do not limit the force and effect of any provisions herein. "Herein" and "hereunder" mean this Agreement.  As used herein, the singular includes the plural, and use of any gender or neutral means either gender or neutral as the context requires.

10.3.  The Factoring Agreement between Steelhead Finance and Client and the terms and conditions of this document cannot be changed or terminated orally.  The terms and conditions contained in this document may be updated by Steelhead Finance from time to time.  Continued use of Steelhead Finance's factoring services by Client for a period of ninety (90) days after Client is advised of any such update shall constitute Client's acceptance of the revised terms and conditions.

10.4.  Steelhead Finance cannot waive any rights or remedies hereunder unless the waiver is in writing and signed by Steelhead Finance.  A waiver by Steelhead Finance of a right or remedy under this Agreement on one occasion will not be a waiver of that right or remedy on any subsequent occasion or of any other right or remedy.

10.5.  Client may not assign any of its rights or Obligations hereunder. Steelhead Finance may assign or grant a security interest in any Accounts purchased by Steelhead Finance and in any other Collateral from Client.  Steelhead Finance may assign any and all of its rights and remedies hereunder including, without limitation, this Agreement and the right to notify Customers to make payment to Steelhead Finance's assignee.  If at any time or times, by assignment or otherwise, Steelhead Finance assigns any Obligations and Collateral or any other security, such assignment shall carry with it Steelhead Finance's powers and rights under this Agreement with respect to the Obligations and Collateral or other security assigned, and the assignee shall become vested with such powers and rights, whether or not they are specifically referred to in

**Exhibit 1**
**Page 26 of 30**

DocuSign Envelope ID: 7E397978-7427-42EB-B864-FD19635E16C8

the assignment. If and to the extent Steelhead Finance retains any other obligation or Collateral or other security, Steelhead Finance will continue to have the rights and powers set forth in this Agreement.

10.6. Except as set forth in Section 10.5, this Agreement shall inure to the benefit of and shall be binding upon the heirs, executors, administrators, personal representatives, successors, and assigns of the parties thereto.

**11.    GOVERNING LAW, VENUE AND WAIVER OF JURY TRIAL**

11.1. Client acknowledges and agrees as follows: This Agreement is made, entered into, and executed in the State of Oregon, this Agreement is not effective unless and until accepted and signed by Steelhead Finance in Oregon, Steelhead Finance will provide its services under this Agreement in Oregon, and that all sums due hereunder are payable to Steelhead Finance in the State of Oregon. To the maximum extent permitted by applicable law, all issues relating to the transactions described herein shall be governed by and interpreted in accordance with the laws of the State of Oregon, it being recognized by the parties that issues such as creation, perfection and priority of the security interest granted to Steelhead Finance may be governed by the laws of the jurisdiction in which the collateral security is located or deemed to be located. Client hereby consents to the jurisdiction of any local, state or federal court located within the State of Oregon. If Client presently is, or in the future becomes, a non-resident of the State of Oregon, Client hereby waives personal service of any and all process and agrees that all such service of process may be made by certified or registered mail, return receipt requested, directed to Client, at Client's address appearing in Steelhead Finance's records and service so made shall be complete ten (10) days after the same has been posted as aforesaid.

11.2. IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED TO OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

11.3. If any provision of this Agreement shall be declared illegal, contrary to law, or otherwise unenforceable, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. However, if any interest or other charges provided for in this Agreement are determined by a court of competent jurisdiction to exceed the maximum interest rate allowed by applicable law, said interest and other charges shall be reduced so as not to exceed such lawful rate.

**12. NOTICES**

Notices from either party to the other shall be given in writing and mailed postage prepaid, registered or certified mail, return receipt requested, or sent by a national overnight delivery service, or sent by registered e-mail, or sent by facsimile transmission to the recipient's facsimile machine, addressed to the proper recipient at the Client Address, in the case of Client, and at 3518 Heathrow Way Medford, OR 97504, in the case of Steelhead Finance, or at such other address as either party may hereafter advise the other in writing. Steelhead Finance may also give notice to Client at such address at which Steelhead Finance customarily communicates with Client. Except as otherwise expressly provided herein, all such notices shall be effective upon receipt if delivered by hand or facsimile or registered e-mail or national overnight delivery service, and otherwise three (3) business days after placement in the U.S. mail.

**Exhibit 1**
**Page 27 of 30**

DocuSign Envelope ID: A26F8300-5C81-4F96-9968-238F31D815FE

1st ADDENDUM TO FACTORING AGREEMENT BETWEEN
PEOPLE'S BANK OF COMMERCE AND SEATTLE PREMIUM TRANSPORTATION LLC
DATED MARCH 15, 2019

The following terms and conditions of that certain Factoring Agreement between People's Bank of Commerce, transacting business under the name of Steelhead Finance ("Steelhead Finance") and Seattle Premium Transportation LLC transacting business under the name of Seattle Premium Logistics ("Client") on this 16th day of January, 2020 are modified as follows:

The "Factor Fee" in A.2 of Section C (Definitions), shall change to 2.00% of the Net Face Value of each Account. In addition, the Factor Fee on each purchased Account will increase by one tenth of one percent (0.1%) for each day an invoice exceeds the Recourse Date.

The "Recourse Date" in A.3 of Section C (Definitions), shall change to 90 days from the date the invoice evidencing the Purchased Account was purchased.

All other terms and conditions of that section of that certain Factoring Agreement dated March 15, 2019, will remain in full force and effect.

Section D.  This Addendum adds the following to Section D:

Section 9.2 of the Factoring Terms and Conditions is hereby modified by changing when the Termination Notice will be accepted. The Termination Notice will now be accepted between seventy five (75) and one hundred five (105) days prior to (i) one year from the accepted date of this addendum or (ii) the annual anniversary of the accepted date of this addendum.

All other terms and conditions of that section of that certain Factoring Agreement dated March 15, 2019, will remain in full force and effect.

All other terms and conditions of that certain Factoring Agreement dated March 15, 2019, and any addendums subsequent to that Factoring Agreement will remain in full force and effect.

This Addendum becomes effective when it is signed by Client and either (a) accepted by an authorized officer of Steelhead Finance or (b) when Steelhead Finance's first Advance hereunder occurs.

SEATTLE PREMIUM TRANSPORTATION LLC

_Gill Mandeep_                                                    1/21/2020
_____          _____
Mandeep Singh Gill, Member                                Date

Has there been any change in the ownership of Seattle Premium Transportation LLC? _No____

Accepted this 16th day of January 2020, at Medford, Oregon

PEOPLE'S BANK OF COMMERCE

_William D. Stewart_
_____
William D. Stewart, Executive Vice President

**Exhibit 1**
**Page 28 of 30**

DocuSign Envelope ID: A26F8300-5C81-4F96-9968-238F31D815FE

## 1st ADDENDUM TO EXHIBIT "D"

### VOLUME-BASED FEE PROGRAM

This is the 1st Addendum to Exhibit "D" which is incorporated into Steelhead Finance's Factoring Terms and Conditions as referenced in Section D of the Factoring Agreement ("Agreement") dated March 15, 2019 between People's Bank of Commerce, dba Steelhead Finance ("Steelhead Finance") and Seattle Premium Transportation LLC ("Client").

On this 16th day of January, 2020, Exhibit "D" shall be modified as follows:

The Factor Fee Chart, as referenced in Section 2 shall be replaced with the following:

**FACTOR FEE CHART**

| MONTHLY FACTOR VOLUME AMOUNT | FACTOR FEE |
|---|---|
| $100,001 and over | 2.00% of the Net Face Value of each Account.  In addition, the Factor Fee on each purchased Account will increase by one tenth of one percent (0.1%) for each day an invoice exceeds the Recourse Date. |
| $100,000 and under | 2.50% of the Net Face Value of each Account.  In addition, the Factor Fee on each purchased Account will increase by one tenth of one percent (0.1%) for each day an invoice exceeds the Recourse Date. |

Accepted and agreed to this 16th day of January, 2020.

**SEATTLE PREMIUM TRANSPORTATION LLC**          **PEOPLE'S BANK OF COMMERCE**

_Gill Mandeep_                                          _William D. Stewart_

Mandeep Singh Gill, Member                          William D. Stewart, Executive Vice President

**Exhibit 1**
**Page 29 of 30**

DocuSign Envelope ID: BCC88700-C2E9-4A4D-926D-C46505AE2729

2nd ADDENDUM TO FACTORING AGREEMENT BETWEEN
PEOPLE'S BANK OF COMMERCE AND SEATTLE PREMIUM TRANSPORTATION LLC
DATED MARCH 15, 2019

The following terms and conditions of that certain Factoring Agreement between People's Bank of Commerce, transacting business under the name of Steelhead Finance ("Steelhead Finance") and Seattle Premium Transportation LLC ("Client") on this 1st day of December, 2021 are modified as follows:

The "Advance Percentage" in A.1 of Section C (Definitions), shall change to ninety percent (90%).

All other terms and conditions of that section of that certain Factoring Agreement dated March 15, 2019, will remain in full force and effect.

Section 9.2 of the Factoring Terms and Conditions is hereby modified by changing when the Termination Notice will be accepted. The Termination Notice will now be accepted between seventy five (75) and one hundred five (105) days prior to (i) one year from the accepted date of this addendum or (ii) the annual anniversary of the accepted date of this addendum.

All other terms and conditions of that section of that certain Factoring Agreement dated March 15, 2019, will remain in full force and effect.

All other terms and conditions of that certain Factoring Agreement dated March 15, 2019, and any addendums subsequent to that Factoring Agreement will remain in full force and effect.

This Addendum becomes effective when it is signed by Client and either (a) accepted by an authorized officer of Steelhead Finance or (b) when Steelhead Finance's first Advance hereunder occurs.


SEATTLE PREMIUM TRANSPORTATION LLC

*Karmjit Singh*                                          12/1/2021
Karmjit Singh, Member                                   Date


Has there been any change in the ownership of Seattle Premium Transportation LLC? NO


Accepted this 1st day of December 2021, at Medford, Oregon

PEOPLE'S BANK OF COMMERCE

*William D. Stewart*

William D. Stewart, Executive Vice President


**Exhibit 1**
**Page 30 of 30**

| Invoice # | Load # | SPL Actual Invoice | SteelHead Invoice | Short Paid amount | Date |
|---|---|---|---|---|---|
| 8572 | **4382955** | $1,801.25 | $1,230 | $571 | 9/1/2021 |
| 8530 | **4360533** | $1,362.15 | $1,196.95 | $165.20 | 9/8/2021 |
| 8528 | **4360531** | $1,272.15 | $1,039.65 | $232.50 | 8/9/2021 |
| 8553 | **4461507** | $662.05 | $464.55 | $197.50 | 9/9/2021 |
| 8576 | **4395289** | $3,085.30 | $2,789.05 | $296.25 | 8/24/2021 |
| 8591 | **4405512** | $5,445.15 | $4,908.90 | $536.25 | 8/19/2021 |
| 8625 | **4445473** | $1,072.10 | $407.10 | $665.00 | 9/1/2021 |
| 8629 | **4448568** | $5,684.40 | $5,056.90 | $627.50 | 9/22/2021 |
| 8675 | **4481192** | $2,439.50 | $1,625.75 | $813.75 | 9/19/2021 |
| 8676 | **4482350** | $1,049.25 | $846.30 | $202.95 | 9/25/2021 |
| 8630 | **4448569** | $5,584.75 | $1,107.10 | $4,477.65 | 9/22/2021 |
| 8632 | **4448576** | $5,521.00 | $5,091.90 | $$ 429.10 | 9/22/2021 |
| 8641 | **4448579** | $5,563.50 | $1,107.10 | $4,456.40 | 9/22/2021 |
| 8644 | **4448583** | $5,542.25 | $5,091.90 | $450.35 | 9/22/2021 |
| 8642 | **4448587** | $5,416.00 | $1,107.10 | $4,308.90 | 9/22/2021 |
| 8648 | **4448591** | $5,682.25 | $5,091.90 | $590.35 | 9/22/2021 |
| 8631 | **4448574** | $5,534.75 | $1,107.10 | $4,427.65 | 9/22/2021 |
| 8643 | **4448589** | $5,499.75 | $5,091.90 | $407.85 | 9/22/2021 |
| 8690 | **4489797** | $4,339.25 | $3,639.00 | $700.25 | 10/24/2021 |
| 8736 | **4493332** | $1,008.10 | $459.35 | $548.75 | 9/19/2021 |
| 8927 | **4659687** | $788.35 | $441.25 | $347.10 | 11/28/2021 |
| 9134 | **4833445** | $2,126.50 | $1,808.00 | $318.50 | 11/28/2021 |
| | | **Total $ 76,479.75** | **Total $ 50,708.75** | **Total $ 25771.00** | |

**Exhibit 2**
**Page 1 of 1**